Hillsborough
No. 83-220

## THE STATE OF NEW HAMPSHIRE

### v.

## DREW BRODEUR

April 19, 1985

412

*Gregory H. Smith,* attorney general (*Andrew L. Isaac,* assistant attorney general, on the brief), by brief for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief for the defendant.

KING, C.J.   The defendant, Drew Brodeur, was found guilty in the Superior Court (*Contas,* J.) of driving while intoxicated. RSA 265:82 (1982) (since amended). Before trial the defendant moved to suppress both his statements to the police and the results of a breathalyzer test. The trial court denied the defendant's motion to suppress, and the defendant appeals the trial court's evidentiary rulings. We affirm.

At approximately 12:45 a.m. on January 23, 1982, Officer Mark Coro of the Milford Police Department was proceeding east on Elm Street in Milford when he observed the defendant's vehicle traveling west on Elm Street. Officer Coro testified that he observed the defendant driving in an erratic manner. At one point the defendant's vehicle slowed down and pulled over to the right hand side of the street and then pulled back into the street and crossed over the solid line in the center of the road. The officer further testified that he stopped his cruiser and observed the defendant accelerate, turn off of Elm Street, and park behind a building.

Officer Coro turned his cruiser around and followed the defendant. When the officer reached the defendant, the defendant's vehicle was stopped at a grocery store and the defendant had just opened his door and stepped out of the vehicle. Officer Coro parked his cruiser so that it blocked the defendant's vehicle and then

approached the defendant. Officer Coro informed the defendant that he had observed the defendant's erratic driving and advised the defendant that he had intended to stop him.

Officer Coro observed that the defendant's eyes were glassy and red, that his breath smelled of alcohol and that his muscular coordination was poor. The defendant agreed to perform a field sobriety test, and on the basis of that test, Officer Coro decided to arrest the defendant and take him to the Milford police station for additional tests. The officer testified that on the way to the police station he informed the defendant of his *Miranda* rights but did not question him.

At the police station, the defendant was readvised of his *Miranda* rights regarding questioning by the police and of the implied consent law regarding blood alcohol testing. The defendant indicated that he understood his rights and agreed to answer questions. The defendant then admitted that he had consumed both beer and liquor prior to driving his vehicle down Elm Street past Officer Coro's cruiser. During the questioning the officer observed that the defendant's eyes were glassy and bloodshot and that he displayed poor motor coordination.

A certified breathalyzer operator was called to the station, and the defendant was tested using a breathalyzer machine which had been certified three days earlier. The operator testified that the machine used had always worked well and that it correctly measured the simulator test sample just after its use on the defendant. Test results indicated that the defendant had a blood alcohol level of .16 percent.

The defendant's statements to the police, as well as the results of the breathalyzer test, were admitted at trial over the defendant's objection. On appeal the defendant questions whether: (1) the initial stop by Officer Coro was proper; (2) the trial court met its burden of proving beyond a reasonable doubt that the defendant waived his right to remain silent; and (3) a proper foundation of reliability was established for the admission of the breathalyzer test results.

The defendant first argues that the initial stop by Officer Coro was a violation of the defendant's rights under the New Hampshire and United States Constitutions. *See* N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. We will consider the defendant's State constitutional argument first. *See State v. Ball,* 124 N.H. 226, 231, 471 A.2d 347, 350 (1983).

New Hampshire citizens are entitled to protection from unreasonable searches and seizures. "Every subject hath a right to be secure from all unreasonable searches and seizures of his person, his house, his papers, and all his possessions." N.H. CONST. pt. I, art. 19. "[W]e

interpret part I, article 19, to reflect the intent of the framers that all searches and seizures must be reasonable." *State v. Ball, supra* at 234, 471 A.2d at 352.

■ In determining whether the seizure of a person was reasonable under the New Hampshire Constitution this court is not bound to use the minimal federal constitutional standards, but may "interpret the New Hampshire Constitution as more protective of individual rights . . . ." *State v. Ball, supra* at 231–32, 471 A.2d at 350 (citing *State v. Settle*, 122 N.H. 214, 217, 447 A.2d 1284, 1285 (1982)). Concerning the question whether the seizure of the defendant in the instant case was reasonable, however, we find the federal case law instructive and will therefore use it as an aid to the interpretation of our own constitution.

■■ When the defendant parked his motor vehicle at a grocery store, Officer Coro parked his cruiser so that it blocked the defendant's vehicle. Officer Coro then got out of his cruiser and approached the defendant, who was standing outside his vehicle. An individual is seized if, under all of the circumstances, a reasonable person would have believed that he was not free to leave. *State v. Riley*, 126 N.H. 257, 262, 490 A.2d 1362, 1366 (1985); *State v. Hamel*, 123 N.H. 670, 676, 466 A.2d 555, 558 (1983); *see Terry v. Ohio*, 392 U.S. 1 (1968); *see also Florida v. Royer*, 460 U.S. 491, 502 (1983); *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). In this case the defendant was "seized" when Officer Coro approached him for questioning outside the grocery store.

■ Before *Terry v. Ohio supra* and its progeny, only seizures of persons based on probable cause to arrest were held reasonable under the fourth amendment. *Terry* created a limited exception to this general rule: certain seizures are permissible under the fourth amendment if there is an articulable suspicion (not probable cause) that a person has committed or is about to commit a crime. *Terry v. Ohio, supra* at 27; *State v. Hamel*, 123 N.H. 670, 675, 466 A.2d 555, 557 (1983).

■■ An investigatory stop is a very limited seizure that is permitted under the fourth amendment. *Terry v. Ohio, supra* at 16–20. We hold that an investigatory stop is also permitted under the New Hampshire Constitution, part I, article 19. *See State v. Riley, supra* at 263, 490 A.2d at 1366. The United States Supreme Court has stated that, "in justifying the particular intrusion [a stop] the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio, supra* at 21.

Officer Coro testified that the defendant was driving his vehicle erratically and that the wheels of the vehicle crossed over the center line of Elm Street. The defendant committed a traffic violation when he drove his vehicle over the center line, and that act alone justified Officer Coro's decision to stop the defendant. *See Colorado v. Bannister*, 449 U.S. 1, 4 (1980) (stopping a vehicle for a traffic violation is entirely legitimate).

█ The officer's observations provide "specific articulable facts" which form a reasonable basis for his suspicion that the defendant was driving while intoxicated. In *State v. Landry*, 116 N.H. 288, 358 A.2d 661 (1976), a case involving similar facts, this court held that the stop was reasonable under the fourth amendment. In *Landry*, the officer observed the defendant's erratic driving and, based upon that observation, stopped the defendant. Similarly, in this case the police officer's stop of the defendant did not violate the defendant's rights under the New Hampshire Constitution, part I, article 19.

"[W]e need only address federal issues insofar as federal law would provide greater protection, or if the United States Constitution would be offended by our decision." *State v. Scarborough*, 124 N.H. 363, 368, 470 A.2d 909, 913 (1983). Since the New Hampshire Constitution, part I, article 19, provides as much protection as does the fourth amendment of the United States Constitution, regarding a lawful investigatory stop, we need not address the federal issues raised by the defendant.

The defendant objects on appeal to the trial court's ruling that his statements were "freely, voluntarily and intelligently made after being appraised (sic) of his rights and these facts were proven beyond a reasonable doubt . . . ." The defendant claims that his waiver was ambiguous and was therefore not proven beyond a reasonable doubt. Because the defendant's argument is based only upon an assertion of his federal constitutional rights, U.S. CONST. amend. V, we will not address the scope of any existing State constitutional protections. *See State v. Ball*, 124 N.H. at 231, 471 A.2d at 350; *State v. Miskolczi*, 123 N.H. 626, 628, 465 A.2d 919, 920 (1983).

█ In order to establish a waiver of the privilege against self-incrimination and the right to counsel, "[i]t must be shown that there was 'an intentional relinquishment or abandonment of a known right or privilege.'" *State v. Benoit*, 126 N.H. 6, 14, 490 A.2d 295, 301 (1985) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)). Issues of knowing and intelligent waiver of fifth amendment rights are determined by considering the totality of the circumstances, *see State v. Bushey*, 122 N.H. 995, 999, 453 A.2d 1265, 1267 (1982), and

waiver must be proven beyond a reasonable doubt, *State v. Berube*, 123 N.H. 771, 774, 465 A.2d 509, 511–12 (1983).

The defendant's responses to Officer Coro's questions following the reading of the *Miranda* rights at the police station were as follows:

"Question: Do you understand all these rights?
Answer: Uh-huh.
Question: Having these rights in mind, would you answer some questions and perform some tests?
Answer: There's no way I can't talk."

■ The defendant testified at the suppression hearing that he had answered both of Officer Coro's questions (quoted above) in the affirmative. Nonetheless, the defendant claims that he did not understand his rights. An express waiver of fifth amendment rights is not required so long as the totality of circumstances indicates a knowing and intelligent waiver. *State v. Noel*, 119 N.H. 522, 526, 404 A.2d 290, 292 (1979); *North Carolina v. Butler*, 441 U.S. 369, 373 (1979).

■ In this case, after hearing the testimony of the witnesses and the defendant, the court found beyond a reasonable doubt that the defendant had knowingly and intelligently waived his right to remain silent. We find support in the record for the trial court's finding and therefore affirm the admission into evidence of the defendant's statements. *See State v. Zysk*, 123 N.H. 481, 487, 465 A.2d 480, 483 (1983) (although there was conflicting testimony, there was sufficient evidence to support the trial judge's finding beyond a reasonable doubt that a waiver had occurred).

Finally, on appeal the defendant objects to the trial court's admission of evidence of the chemical analysis of the defendant's breath sample. The trial court found that the State had complied with RSA 265:87 and admitted the results of the breathalyzer test, which indicated a blood alcohol level of .16 percent. The defendant claims that the evidence was improperly admitted because the breathalyzer machine was not tested to ascertain whether radio waves interfered with its operation.

■■ Rulings on the admission of evidence are generally within the discretion of the trial court and are not ordinarily disturbed upon appeal. *See State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982). The New Hampshire standard for the admission of evidence of scientific tests has long been established:

"In this state evidence does not have to be infallible to be admissible. If it is of aid to a judge or jury, its deficiencies

or weaknesses are a matter of defense which affect the weight of the evidence but does not determine its admissibility. Scientific tests for intoxication should be no less trustworthy than the views of untrained laymen who have always been permitted to testify as to intoxication on the basis of sight, smell, speech and locomotion."

*State v. Roberts*, 102 N.H. 414, 416, 158 A.2d 458, 460 (1960); *State v. Gallant*, 108 N.H. 72, 75, 227 A.2d 597, 599 (1967); *State v. Kupetz*, 115 N.H. 722, 723, 350 A.2d 335, 336 (1975). "[E]vidence having any tendency, however slight, to prove a particular fact is competent proof of the fact." *Mason v. Railway*, 79 N.H. 300, 303, 109 A. 841, 843 (1919).

In this case, evidence was presented indicating that the machine measured a simulator test sample accurately just after analyzing the defendant's breath sample. The defendant did not present evidence that the machine in question was affected by radio interference, but instead claimed that the State was required to show that the machine was *not* so affected. We have never placed such a requirement upon the State prior to the admission of scientific test results and decline to do so in this case. We therefore affirm the trial court's admission of the results of the breathalyzer test.

*Affirmed.*

All concurred.