Rockingham
No. 84-585

# The State of New Hampshire

## v.

# George Parker

December 31, 1985

*Stephen E. Merrill,* attorney general (*Edna M. Conway,* assistant attorney general, on the brief, and *Tina Schneider,* attorney, orally), for the State.

*Joanne S. Green,* assistant appellate defender, of Concord, by brief and orally, for the defendant.

JOHNSON, J. In this appeal from his conviction for attempted aggravated felonious sexual assault, RSA 632-A:2 (Supp. 1983); RSA 629:1, the defendant argues that the Trial Court (*O'Neil,* J.) erred in (1) denying the defendant's motion to suppress the victim's testimonial evidence and (2) admitting evidence of prior sexual penetration of the victim by the defendant. We find no error and affirm.

On a day in late March or early April of 1984, at approximately 11:30 p.m., Officer James Trueman of the Portsmouth Police Department observed the defendant milling around his camper, parked in the deserted business district of Portsmouth. The officer approached the defendant and asked him "what he was doing in the area and if he had any identification." The defendant identified himself as George Parker, from Crabtree, Oregon, and said that he was looking for part-time work in the area. He stated that he was traveling alone, without any family.

On the evening of May 3, 1984, Officer Trueman was routinely patrolling motel parking lots in Portsmouth because automobile interior thefts were a common problem. He recognized the defendant's camper parked in the Holiday Inn parking lot. The headlights of the vehicle were not on, and the officer saw the defendant sitting behind the wheel. The officer took a second look, directly into the cab of the camper, and noticed a child's "little head peek up over the dashboard, look at [him], and the head went down again." The officer found this unusual because he recalled that the defendant previously had stated that he was traveling alone, and each time he had seen the defendant after the initial conversation, the defendant had been alone.

Officer Trueman went into the Holiday Inn lobby in an attempt to observe what was going on in the defendant's camper, but the defendant drove out of the parking lot before the officer could see anything. Concerned about the child, Officer Trueman decided to follow the defendant's vehicle. He requested an unmarked detective unit to assist in the surveillance of the defendant's camper, and another unit to check the Holiday Inn area, in order to ascertain whether the child had left the camper. Officer Trueman continued to follow the camper, and he radioed police headquarters to ask all the units on duty whether anyone had ever observed the defendant accompanied by a child. Several officers reported to him that every time they had observed the defendant, he had been alone.

Officer Trueman passed the defendant's camper, and saw the child inside. The officer testified that the child "appeared to be okay," but he was not satisfied that the child was safe. As the camper approached the city line, the officer pulled it over in order to "ascertain what the child was doing" with the defendant. The defendant and the child, an eleven-year-old boy, stepped out of the camper and approached the cruiser. The officer asked the defendant whether the child was his son, and the defendant replied affirmatively. The defendant then handed the officer a form signed by the boy's mother that indicated that the child had permission to be with the defendant.

Officer Trueman thought the boy appeared nervous, and asked to speak with him privately. The defendant agreed. The child sat in the cruiser with Officer Trueman, and told him that he was "sort of" scared of the defendant. After the officer learned that the child was living out of defendant's trailer, he questioned the child about his living conditions, and the child described the incident of sexual assault. Officer Trueman then arrested the defendant, for attempted aggravated felonious sexual assault, on the basis of what he had learned from the child.

The defendant was charged with attempted aggravated felonious sexual assault, resisting arrest, and endangering the welfare of a child. The latter charge was ultimately nol-prossed. Before the trial, the defendant moved to suppress the victim's testimony on the basis of the illegality of the initial stop. After a hearing, the trial court denied the motion, ruling that the stop of the defendant's vehicle was constitutional. Alternatively, the trial court held that even if the stop was illegal, the victim's testimony was admissible under the doctrine of inevitable discovery.

At trial, the victim testified that on April 23, 1984, as the defendant and he were getting ready for bed, the defendant placed his

penis in or on the victim's anus. The child also testified, over the defendant's objection, that the defendant had sexually penetrated him a few days earlier. The defendant was found guilty of attempted aggravated felonious sexual assault, and sentenced to seven and one-half to fifteen years of imprisonment. This appeal followed.

The defendant first argues that the victim's testimony should have been suppressed. He asserts that the initial stop of his vehicle by Officer Trueman was constitutionally impermissible under the fourth amendment of the United States Constitution and part I, article 19 of the New Hampshire Constitution, because (1) it was not based upon a specific and articulable suspicion of wrongdoing, and (2) the scope of the intrusion was unreasonable. He argues that the victim's testimony would not have been discovered without the illegal stop, and is thus the "fruit of a poisonous tree" because it was tainted by the illegality of the stop. *State v. Maya*, 126 N.H. 590, 594–95, 493 A.2d 1139, 1143 (1985). We disagree.

State constitutional law is identical to the law of its federal counterpart in this case. *See State v. Brodeur*, 126 N.H. 411, 416, 493 A.2d 1134, 1138 (1985); N.H. CONST. pt. I, art. 19; U.S. CONST. amend. IV. Although we decide the State issue independently, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), using federal precedent only for its help in dealing with the State issue, *see Michigan v. Long*, 103 S. Ct. 3469, 3476 (1983), the analysis and the result are the same under each constitution.

We begin with the first part of the defendant's argument, which challenges the stop of his vehicle as unconstitutional. "An individual is 'seized' for fourth amendment purposes 'if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.'" *State v. Riley*, 126 N.H. 257, 262, 490 A.2d 1362, 1366 (1985) (citing *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (opinion of Stewart, J.); *Florida v. Royer*, 460 U.S. 491, 502 (1983)). The stop of the defendant's vehicle by Officer Trueman constituted a seizure under the fourth amendment and part I, article 19 of the New Hampshire Constitution. *See Terry v. Ohio*, 392 U.S. 1, 16 (1968). The State has the burden of justifying the stop of the defendant's vehicle as a legitimate investigative stop. *Maya, supra* at 595, 493 A.2d at 1143.

In *Terry, supra* at 22–23, the United States Supreme Court recognized that the public interest in effective crime prevention and detection requires that an officer be able to assure himself or herself that the person with whom he or she is dealing is not armed. In *United States v. Cortez*, 449 U.S. 411, 417–18 (1981), the Court held that under the "totality of the circumstances," an inves-

tigative stop must be justified by the existence of a "particularized and objective basis" for believing that the person stopped is, or is about to be, engaged in criminal activity. *See Florida v. Royer*, *supra* at 498. We have held that an investigative stop is constitutionally justified if supported by "specific articulable facts" that form a reasonable basis for the officer's suspicion of criminal activity. *Brodeur, supra* at 415, 493 A.2d at 1138. In determining the sufficiency of the officer's articulable suspicion, the "nature and quality of the intrusion on personal security" must be balanced against "the importance of the governmental interest alleged to justify the intrusion." *United States v. Hensley*, 105 S. Ct. 675, 680 (1985).

Officer Trueman testified that he stopped the defendant's vehicle because he suspected that the child was in danger. The evidence indicates that the officer had a sufficient objective basis for his suspicion. The defendant had always been seen alone by Officer Trueman and a number of other officers, and had said that he was traveling alone. The officer then spotted the defendant in a darkened parking lot, at night, without the lights of the camper on, and noticed a child's head duck up and then down. These observations combined to form an articulable basis for suspicion that the child was in danger. *See United States v. Wickizer*, 465 F.2d 1154 (8th Cir. 1972) (seizure lawful where officer asked the driver of a parked vehicle for identification because of officer's concern over previous rapes in the area and the frightened appearance of young female passengers).

■ Other considerations bolster the State's case. The public has a strong interest in the protection of children, and the prevention of child abuse and abduction. *Cf. Cortez, supra* at 421 n.3 (strong public interest in preventing the entry of illegal aliens at the Mexican border). We are mindful, too, of the limited nature of the intrusion on the defendant's personal security in this case. The defendant's liberty interest was intruded upon only to the extent necessary to ensure the welfare of the child, and most of the officer's questioning was directed only to the child. Because of the importance of the public interest at stake, and the minimal intrusion in this case, an officer may stop a vehicle when his or her observations lead him or her reasonably to suspect that a child may be abused or abducted. *Cf. United States v. Brignoni-Ponce*, 422 U.S. 873, 881 (1975).

■ Moreover, the facts that will reasonably lead an officer to suspect child abuse or an abduction necessarily include subtler clues than are required for a reasonable suspicion of criminal activity involving adult victims. Child abuse cases present unique challenges

to law enforcement officials. Common sense tells us that children are easily coerced, and will rarely indicate to an officer that they are in danger. Indeed, children often will not realize that they are in danger. Thus, the fact that the child did not indicate to Officer Trueman that he was in danger does not mean that the officer could not reasonably suspect wrongdoing. As in any investigative stop, a trained officer may make inferences and draw conclusions from conduct which may seem unremarkable to an untrained observer. *Cortez, supra* at 418; *Brown v. Texas,* 443 U.S. 47, 52 n.2 (1979). We hold that, under the circumstances of this case, Officer Trueman stopped the defendant's vehicle on constitutionally sufficient grounds.

■■ We next look at the scope of Officer Trueman's inquiry. The defendant contends that the officer exceeded the permissible scope of an investigative stop by questioning the child on matters "unrelated to the purpose of the stop." The burden is on the State to demonstrate that the investigative stop was "sufficiently limited in scope and duration to satisfy the conditions of an investigative seizure." *Florida v. Royer, supra* at 500. The officer may ask "a moderate number of questions to determine . . . identity and to try to obtain information confirming or dispelling the officer's suspicions." *Berkemer v. McCarty,* 104 S. Ct. 3138, 3150–51 (1984).

■■ The object of Officer Trueman's inquiry was to confirm or dispel his suspicion that the child was in danger, and not merely to learn the identity of the child. After stopping the defendant's vehicle, the officer observed that the child appeared nervous. In order to ensure that the child was safe, it was necessary for the officer to speak with the child privately, especially given that children rarely will inform an officer of any danger to them in the presence of an abuser. "Simply because the initial questioning might give the appearance that 'all is well,' if an officer has a justifiable basis for the initial intrusion, he may take whatever additional action which would 'warrant a man of reasonable caution' under the circumstances to take." *Wickizer, supra* at 1156. After the child stated that he was "sort of" scared of the defendant, the officer was justified in questioning the boy further about his living conditions to allay his concern for the child's welfare.

■■ The duration of the stop is important in assessing the reasonableness of the scope of the seizure. *Maya, supra* at 596, 493 A.2d at 1144. The detention in this case lasted only long enough to allow the officer to ask the defendant for identification and to question the child privately. The scope of the questioning, therefore, did not exceed legitimate limits, and the seizure was lawful under both the fourth amendment and the New Hampshire Constitution.

The defendant argues that the trial court erred in ruling that even if the stop was unconstitutional, the victim's testimony was admissible under the doctrine of inevitable discovery. Because we hold that the stop was constitutional, we need not reach the issue of whether the inevitable discovery doctrine applies to this case.

The defendant's second argument is that the trial court improperly admitted evidence of a prior sexual penetration of the victim by the defendant. This argument is without merit.

■■ Evidence of past offenses is not admissible to show the defendant's character or propensity for crime, but is admissible for other purposes, such as proof of motive, opportunity, or intent. *See State v. Avery*, 126 N.H. 208, 213, 490 A.2d 1350, 1354 (1985); N.H. R. Ev. 404(b). The trial court must determine whether the evidence is relevant for a purpose other than to show the character or disposition of the defendant, and whether the prejudice to the defendant is outweighed by the probative value of the evidence. *State v. Smith*, 125 N.H. 522, 525, 484 A.2d 1091, 1093–94 (1984).

■■ The testimony of the victim recounted a prior incident of sexual penetration by the defendant. This evidence tended to show the defendant's state of mind before the assault, and was admitted as probative of the defendant's intent. The trial court's decision to admit evidence of a prior bad act will constitute an abuse of discretion only if "clearly untenable or unreasonable to the prejudice of [the defendant's] case." *State v. Whitney*, 125 N.H. 636, 639, 484 A.2d 1158, 1160 (1984). We cannot say that the probative value of the victim's testimony of a prior offense was clearly outweighed by its prejudice to the defendant. We therefore hold that the trial court did not abuse its discretion in admitting the child's testimony.

*Affirmed.*

All concurred.