Merrimack
No. 84-537

THE STATE OF NEW HAMPSHIRE

v.

ROBERT ALLEN

August 7, 1986

*Stephen E. Merrill*, attorney general (*Steven L. Winer*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J. In this appeal from his conviction in the superior court for attempted murder, the defendant argues (1) that *Cann*, J., erred in denying a pretrial motion to quash the indictment because of its failure to specify the degree of murder attempted; (2) that *Nadeau*, J., erred at trial in admitting evidence that the defendant had used a gun in an incident four years before the offense alleged; and (3) that the trial judge also erred in adding a disciplinary period to the minimum sentence possible for the offense. Our decision in *State v. Wheeler*, 127 N.H. 337, 499 A.2d 1005 (1985) disposes of the third issue; after considering the first and second, we affirm.

The defendant and the victim, Peggy Allen, were married in 1977 and divorced in 1980. There was evidence that one day soon after the divorce the victim discovered the defendant in her house, holding a .357 magnum revolver. After telling her that he wanted to talk, he unloaded the gun. The victim then called the police, who took the gun from the defendant.

By late 1981, the defendant and the victim were reconciled, and they lived together until February of 1984, when the defendant accused her of involvement with another man. The defendant indicated to a third person that he would kill the victim, her supposed paramour and himself, if such was necessary to prevent another estrangement.

Thereafter, the victim told the defendant that she wished to leave him. He responded by requesting sexual relations with her. When she refused, the defendant dragged her to their bedroom, where, in the course of a struggle, he took a loaded .38 caliber revolver from the drawer of a nightstand. In the victim's version of the events, the defendant cocked the gun and pointed it at her head. She deflected

his arm, and the gun fired. The defendant then fired two further shots, one of which hit her arm. When she tried to flee, the defendant shot her in the back. He then restrained her for an hour before calling the police.

In the defendant's version, he had intended to kill himself, not the victim. He claimed that he had wounded her accidentally, as she attempted to prevent his suicide, and that he had restrained her only to calm her hysteria. He admitted, however, that prior to the incident he had removed the gun from its accustomed place, loaded it with more than one round and placed it in the nightstand drawer.

The defendant was charged with attempted murder. RSA 629:1, I, provides that

> "[a] person is guilty of an attempt to commit a crime if, with a purpose that a crime be committed, he does or omits to do anything which, under the circumstances as he believes them to be, is an act or omission constituting a substantial step toward the commission of the crime."

Chapter 630 defines three varieties of murder as a completed crime. See RSA 630:1, :1(a); :1(b). Although each shares the common element of causing the death of another, each variety is further defined by reference to the defendant's mental state, see RSA 630:1-a, I(a); :1-b, I(a); :1-(b), I(b), or to a mental state in combination with other factual circumstances, see RSA 630:1, I(a) to (c); :1-a, I(b)(1) to (4).

The indictment against the defendant made no explicit reference to any one of these varieties of the underlying completed crime. It simply charged that he

> "did, with the purpose to cause the death of Peggy E. Allen, shoot her in the back and arm with a .38 caliber revolver, an act which, under the circumstances as he then believed them to be, was a substantial step towards the commission of the crime of murder."

The defendant moved to quash the indictment on the ground that it failed to allege all of the elements of an offense, see State v. Bussiere, 118 N.H. 659, 661, 392 A.2d 151, 153 (1978), and failed to allege sufficient facts to apprise him of the charge, see State v. Stiles, 123 N.H. 680, 683, 465 A.2d 908, 910 (1983). The court denied the motion. In the subsequent trial, however, both the court and the prosecution treated the indictment as charging an attempt to commit murder in the first degree, and the court so instructed the jury.

In this appeal the defendant concentrates on the claim that the indictment failed to allege all of the necessary elements of at-

tempted murder. He asserts that to provide sufficient notice of the offense he is charged with, the indictment must identify the variety of murder allegedly attempted. On his theory, the allegation that a defendant acted with a purpose to cause the death of another merely states the mental element required for an attempt under RSA 629.1, I, together with the result intended; in failing to identify the specific variety of murder attempted it fails to provide him with sufficient notice to prepare his defense.

The defendant thus raises an issue on which this court has previously commented in dictum, *see State v. McPhail*, 116 N.H. 440, 442, 362 A.2d 199, 201 (1976), but on which it has never directly ruled: whether attempted murder is a single, generic crime, or whether there are varieties of attempted murder corresponding to varieties of murder as a completed crime, one of which must be specifically alleged in an indictment. *See also State v. Elbert*, 125 N.H. 1, 480 A.2d 854 (1984) (indictment for attempted first degree murder; conviction for attempted second).

The State assumes in its brief, as it did at trial, that the defendant is correct to the extent that he claims that the crime is not generic and that the State must prove an attempt to commit murder of a specific variety. In following out the consequences of that position, however, we find good reasons to reject it.

To understand those consequences, we need to attend to the definitions of the varieties of murder as completed crimes, and to their distinguishing mental states. RSA 630:1, I(a) to (c) defines capital murder as knowingly causing the death of either a law enforcement officer acting on duty or of another in connection with the commission of certain other crimes. RSA 630:1-a provides alternative definitions of first degree murder: purposely causing death, RSA 630:1-a, I(a), or knowingly causing the death either of certain political figures, RSA 630:1-a, I(b)(4) or of another in connection with the commission of certain other crimes, RSA 630:1-a, I(b)(1) to (3). Second degree murder is defined as causing death knowingly, RSA 630:1-b, I(a), or recklessly under circumstances manifesting extreme indifference to human life, RSA 630:1-b, I(b).

As a general rule, acting purposely or with a purpose is defined as acting with the conscious object to cause a given result or to engage in given conduct. RSA 626:2, II(a). When the charge is first degree murder, however, it is insufficient to prove only that the defendant acted with the conscious object to cause the death of another; it is also necessary to prove that he acted with premeditation and deliberation. RSA 630:1-a, II. Acting knowingly is defined as acting with awareness either of the nature or natural tendency of one's conduct, or of material factual circumstances. RSA 626:2, II(b). And finally,

acting recklessly is defined as acting with an awareness and a conscious disregard of a substantial and unjustifiable risk that material circumstances exist or that a given result will follow from one's acts. RSA 626:2, II(c).

Bearing these definitions in mind, the most obvious consequence of accepting the defendant's theory would be the requirement to allege and prove two separate mental elements with respect to the same material element of the offense, *see* RSA 625:11, IV: the purposeful state of mind required under the attempt statute, and a further state of mind required to identify the specific variety of murder attempted. In considering the merits of the defendant's theory we might appropriately stop right here; two simultaneous states of mind with respect to the same material element would be too bizarre for a practical legal system. But lest there be any doubt about this, we will consider some specific problems of pleading and proof that would follow from the defendant's position.

Such problems admittedly would be manageable when the intended variety of murder involved a purposeful state of mind, like the crime of attempt itself. For example, one type of murder in the first degree is "purposeful" killing, although it is necessary to prove not only that a defendant caused death with the purposeful state of mind as defined by RSA 626:2, II(a), but that he acted with deliberation and premeditation as well. RSA 630:1-a, II.

All of these elements could be charged consistently, albeit awkwardly, by an attempted murder indictment alleging that the defendant acted with a purpose to kill another purposely, with premeditation and deliberation. (In an indictment for completed first degree murder, it is not necessary to allege premeditation and deliberation expressly, because the burden to prove those elements arises by operation of RSA 630:1-a, II, *see State v. Glidden*, 123 N.H. 126, 132, 459 A.2d 1136, 1139 (1983). On the defendant's theory, however, an indictment for an attempt to commit that crime would require explicit allegations of premeditation and deliberation, in order to distinguish the mental element of the murder attempted from the purposeful state of mind required for an attempt.) Elimination of the redundancy, *see State v. Chaisson*, 123 N.H. 17, 25, 458 A.2d 95, 99 (1983), would leave an indictment charging that a defendant acted with a purpose to cause death with premeditation and deliberation. In the case before us, the court treated the indictment as if it had been written in just this way.

A more difficult problem would arise, however, if we applied the defendant's theory to an attempt to commit a variety of murder that is not itself defined by reference to a purposeful mental state. For example, capital murder requires a knowing, mental state, *see* RSA

630:1, I, and the mental states for second degree murder are either knowing, or reckless with extreme indifference to the value of human life, *see* RSA 630:1-b. These mental states involve no conscious object to cause death; a knowing state of mind merely appreciates the nature and natural consequences of intended action, RSA 626:2, II(b), and a reckless state of mind does no more than consciously disregard a substantial and unjustifiable risk of causing the forbidden result. RSA 626:2, II(c).

It would be absurd to charge that a defendant acted with the conscious object of committing murder, and at the same time charge that if he had completed the crime he would have acted without a conscious object to cause the victim's death (*i.e.*, only knowingly or recklessly with extreme indifference). Clearly, then, a charge of attempt cannot be combined directly with the statutory definitions of capital and second degree murder.

There is, however, one theoretical basis for indirectly charging capital or second degree murder consistently with the purposeful state of mind that must be alleged in order to charge attempt. RSA 626:2, III provides that proof that a defendant acted with a more culpable mental state will satisfy a requirement to prove a less culpable state. Proof that a defendant acted purposely would therefore satisfy a requirement to prove that he acted knowingly, and an indictment that a defendant acted with a purpose to cause death, but without premeditation or deliberation, would suffice to charge the knowing mental element of capital murder and of one variety of second degree murder. On such reasoning there would be at least an internally consistent basis for charging varieties of attempted murder besides murder in the first degree.

Even though this reasoning might suffice to save the defendant's theory from absurdity, it is open to two persuasive objections. First, its extreme technicality is inappropriate for a criminal statute. An elaborate analytical structure may not be surprising in construing a tax code, but there is a good reason to doubt that the legislature ever intended to authorize a variety of attempted murder charges requiring such a convoluted theoretical justification. We are dealing, after all, with a code of basic human conduct, not with a system of esoteric rules designed to guide specialist professionals.

The second objection to the defendant's position, and the reasoning it entails, is that it finds no reflection in the penalty statute for attempted murder, RSA 651:2, II-c (Supp. 1983), which simply provides for a maximum term of thirty years, without any reference to varieties of murder that might be attempted. The widely varying penalties for the different varieties of murder, *see* RSA 630:1, III (Supp. 1985); RSA 630:1-a, III; RSA 630:1-b, II, would lead us to

anticipate a corresponding gradation of attempt penalties if the legislature had intended to define attempted murder by reference to the varieties of murder attempted. The absence of any such express gradation is all the more striking when we realize that from time to time the legislature has modified the law relating to murder and defining its varieties, see McPhail, 116 N.H. at 441, 362 A.2d at 200, but has never modified the penalty for attempted murder except to increase its maximum possible term. See Laws 1979, 126:6. The provision of only one penalty for attempted murder thus suggests that the legislature assumed that only a single variety of the crime existed.

Since that single variety of attempted murder must be consistent with the purposeful state of mind required under the attempt statute, two conclusions are possible. The first is that attempted first degree murder is the one punishable variety. This, however, would leave no penalty for an act committed with a purpose to cause death but without deliberation and premeditation. Obviously, it would be unreasonable to infer a legislative intent to provide such a loophole.

 We therefore adopt the remaining possibility consistent with the requirement to prove a purposeful state of mind under the attempt statute: attempted murder is a generic crime comprising an act committed with the purpose to cause the death of another, when that act is a substantial step toward the causation of death. See RSA 629:1, I. In reaching this result, we affirm the dictum of the court in McPhail, 116 N.H. at 442, 362 A.2d at 201:

> "the word 'capital' in the indictment of attempted 'capital' murder may be considered surplusage under RSA 629:1 IV because the State would not be required to prove an attempted 'capital' murder in order to sustain a charge of attempted murder; all classifications of murder are included in the charge."

Given this result, it follows that the present indictment states all of the elements of the offense, and we hold that the trial court properly denied the defendant's motion to quash. It is perhaps needless to add that we find no error prejudicial to the defendant in the trial court's actual instruction placing a higher burden on the State than the statute required. See Elbert, 125 N.H. at 1, 480 A.2d at 854 (indictment unnecessarily charged an attempt to commit a specific variety of murder and the present issue was never raised).

 Out of caution, we also note that the provision for only a generic offense of attempted murder does not mandate blindness to facts that would have determined the variety of murder if the act

had been completed. While a reference to first degree or capital murder is surplusage as a matter of pleading, evidence that would have had a bearing on the degree of the completed crime may be admitted at trial and considered in setting the appropriate sentence.

We turn now to the defendant's second claim, that the trial court erred in admitting the victim's testimony that after the 1980 divorce, less than three and one-half years before the incident in question, the defendant had entered her house armed with a loaded revolver. Although the defendant objected that the event was too remote in time to have probative value, the trial court admitted the evidence for its bearing on "premeditation and deliberation and the relationship between the parties as described by the defendant . . . ."

■■ Remoteness is one element to be considered in balancing probative value against the prejudicial effect of proffered evidence. This evaluation is a subject for the trial court's discretionary judgment, and we will not reverse without a demonstration that it was an abuse of discretion to admit the evidence. *State v. Parker*, 127 N.H. 525, 532, 503 A.2d 809, 813 (1985). We see no abuse.

In assessing the probative value of the evidence offered, the trial court could reasonably find that the defendant's behavior in 1980 indicated that he believed that some use of a firearm was appropriate in response to a breach of his relationship with the victim. Since the testimony about the earlier incident did not suggest that the defendant intended to threaten or commit suicide, preparation for the possibility of offensive use was inferable. Such an inference could corroborate evidence that the defendant had intended at the time of the later incident to use the gun to kill the victim. Furthermore, the indication that the defendant previously considered the offensive use of a gun had a bearing on the amount of time necessary to complete deliberation and premeditation in the later instance. *See Elbert*, 125 N.H. at 12, 480 A.2d at 860. Consequently, evidence of the 1980 incident could have been found relevant not only to the defensive claims of intended suicide and accidental shooting, but to the charge of purpose to kill, and to the existence of deliberation and premeditation as well. Although the passage of time since 1980 reduced the weight of that evidence to some degree, its force had certainly not diminished entirely.

■ Assuming that admission of this evidence carried any risk of undue prejudice, the remaining evidence submitted minimized that risk. Properly admitted testimony provided evidence that the defendant had violently threatened his wife on many occasions over the course of their marriage, and had spoken menacingly about her and others a week prior to the incident. The defendant admitted

transferring the revolver from its usual location in the trunk of his car to the nightstand in the victim's bedroom on the day of the 1984 incident, and loading it with five rounds, despite his claim that he only meant to kill himself. In this context the likelihood of unfair prejudice from admitting the disputed evidence was slight, and the trial court abused no discretion in finding that the defendant had failed to carry his burden to demonstrate that the risk of such prejudice outweighed probative value. *See State v. Staples*, 120 N.H. 278, 284, 415 A.2d 320, 323–24 (1980).

■ We should note that the defendant's trial counsel did not couch the objection to this evidence in terms of the rule now embodied in New Hampshire Rule of Evidence 404(b), excluding evidence of prior bad acts if offered only to prove propensity. Rule 103(b)(1) requires counsel to state "explicitly the ground of objection" when the court admits evidence over an objection because "all other grounds for objection shall be deemed waived". *See* N.H. R. Ev. 103(b)(1). An objection on this specific ground would not have affected the result we reach, however. Since evidence of prior acts is admissible under Rule 404(b) unless it is only relevant to prove propensity, the evidence in question here was admissible for its relevance to prove "motive, . . . intent, . . . plan, . . . or absence of . . . accident." N.H. R. Ev. 404(b); *see United States v. Fosher*, 568 F.2d 207, 212 (1st Cir. 1978) (Federal Rule of Evidence 404(b) not exclusionary; permits introduction of such evidence unless sole purpose is to prove propensity). Although the rule would still have required the trial court to balance the probative force of evidence of prior bad acts against its likely prejudicial effect, our prior discussion indicates that on such a balance the evidence would have been admissible. *See Parker*, 127 N.H. at 532, 503 A.2d at 813.

■ We should also note that the defendant's brief referred in passing to the absence of any instruction to the jury expressly limiting the use of the evidence in question. Suffice it to say that the obligation to request any such desired instruction rested upon counsel, who made no such request. *See* N.H. R. Ev. 105. (". . . the court, upon request, shall restrict . . . evidence to its proper scope and instruct the jury accordingly."); *United States v. Regner*, 677 F.2d 754, 757 (9th Cir.), *cert. denied*, 459 U.S. 911 (1982) (no error in failure of court to give limiting instruction regarding use of evidence of prior insurance claims in mail fraud case, where counsel requested that the "record reflect" that evidence was introduced for limited purpose but did not request limiting instruction); *but see* 1 J. WEINSTEIN & M. BERGER, WEINSTEIN'S EVIDENCE § 105[05], at 105–35 (1986); *Cleaver v. United States*, 238 F.2d 766, 770 (10th Cir. 1956)

(in federal courts, failure to give limiting instruction *sua sponte* can rise to level of plain error). In any case, counsel may well have made a sensible tactical choice in calling no further attention to the evidence, which was admissible with or without a cautionary instruction to the jury.

*Affirmed.*

All concurred.