Hillsborough
No. 82-091

THE STATE OF NEW HAMPSHIRE

v.

DONALD HAMEL

August 31, 1983

*Gregory H. Smith,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, and *Joanne S. Green*, assistant appellate defender, of Concord (*Mr. Duggan* and *Ms. Green* on the brief, and *Ms. Green* orally), for the defendant.

KING, C.J. The defendant, Donald Hamel, appeals his conviction of first degree murder, RSA 630:1-a. We affirm.

On October 3, 1980, between 12:20 a.m. and 1:15 a.m., Raymond Breault, a Manchester cab driver, was shot in the head and killed as he sat in his cab at the intersection of Lake Avenue and Maple Street in Manchester. An autopsy revealed that Breault's death was caused by a single gunshot wound which entered his brain.

On the evening of October 3, the defendant and his half-brother, Robert Butler, were arrested on suspicion of robbery outside a Manchester store. A .22 caliber handgun and three .22 caliber bullets were recovered from the defendant and from Butler's car. The defendant was later charged with first degree murder.

Prior to trial, the defendant moved to suppress the evidence seized from the car on the ground that the police officer lacked probable cause to arrest him. After a hearing on the motion, the Superior Court (*Bean*, J.) denied the motion.

At trial, Mildred Butler, Robert Butler's wife, testified that the defendant arrived at the Butler apartment at approximately 12:35 a.m. on October 3, 1980. She testified that soon after his arrival, the defendant admitted shooting a cab driver. Robert Butler testified that when he arrived at his apartment in the early morning of October 3, 1980, the defendant was there and confessed to shooting a cab driver. A third witness, Gary Layne, testified that he met Robert Butler and the defendant on the afternoon of October 3, 1980, and that the defendant told him that he had killed a cab driver.

The State also introduced the testimony of a firearms identification expert who testified, over the defendant's objection and exception, that the class characteristics of the bullet recovered from Breault's body were consistent with the class characteristics of a test bullet fired from the defendant's gun. He was unable to conclude that the bullet was fired from the defendant's gun, however, because most markings on the bullet had been obliterated.

At the close of the State's case, the defendant moved to dismiss the case for failure on the part of the State to prove premeditation and deliberation, but the court denied the motion. After the jury returned a verdict of guilty, the defendant filed a motion to set aside the verdict on the ground that the State had failed to prove premeditation and deliberation, but this motion was also denied, and the defendant appealed.

On appeal, the defendant raises three arguments. First, he contends that the court erred in denying the motion to suppress the gun seized from Butler's car at the time of arrest. Second, he argues that the trial court abused its discretion in admitting the gun found in Butler's car and the testimony of the firearms expert regarding the gun, because the testimony was inconclusive and its prejudicial effect outweighed its probative value. Finally, the defendant argues that there was insufficient evidence of premeditation and deliberation, and therefore that his motions to dismiss and to set aside the verdict should have been granted.

In order to determine whether the trial court properly denied the defendant's motion to suppress, a discussion of the events leading up to the discovery of the evidence is necessary. On October 3, 1980, the day of the defendant's arrest, a grocery store in Derry and two grocery stores in Manchester were robbed. Officer Douglas Dowd of the Manchester Police Department received information about the robberies during the course of his duties. He was informed that the car involved in the Derry robbery was a family-sized car, possibly a dark maroon or rust color, and possibly with a vinyl roof. The Derry robbery suspect was described as a man of medium build, wearing a green army jacket. The suspect in the Manchester robberies was described as a male of medium height and build, wearing a green army jacket or army fatigues, and a green khaki-like goalie's mask.

After receiving this information, Officer Dowd decided to stake out Arthur's Fruit Store in Manchester. At approximately 11:45 p.m., a dark-colored, family-sized, two-tone car with two people in it approached the store and stopped a short distance from it. The defendant, who was the passenger in the car, walked to the front of Arthur's Fruit Store and looked into the store window for ten to twelve seconds. The defendant then walked to the door of the store and looked inside for approximately the same length of time. He then scanned the neighborhood for five or six seconds. The defendant then returned to the car, pausing to look in the store door and window again. The defendant approached the passenger side of the vehicle, and leaned down and began to talk with the driver of the car. He then looked up, saw Officer Dowd, and reached toward the floor of the car.

Officer Dowd radioed police headquarters to report what he had seen. He then approached the car and asked the defendant to step away from it. Dowd looked into the car and saw a khaki-like mask lying on the floor. He then frisked the defendant. At this point, a second police officer arrived; he ordered the driver, Robert Butler, out of the car and frisked him. Seconds later, Detective Donald

Vandal of the Manchester Police Department, who had been investigating the two Manchester robberies, arrived at the scene, approached the car, and saw a gun and mask on the floor near the passenger seat. He ordered both the defendant and Butler arrested and handcuffed.

The trial court held that Officer Dowd made a lawful investigatory stop of the defendant, *see Terry v. Ohio*, 392 U.S. 1 (1968), and that the defendant had not been arrested until Detective Vandal ordered his arrest when he saw the gun and mask on the floor of the car. The defendant challenges these findings, arguing that Officer Dowd's actions constituted an arrest, and that Officer Dowd lacked probable cause to arrest him.

■ Not all police seizures of a person constitute an arrest. In *Terry v. Ohio*, the United States Supreme Court discussed the circumstances under which a police officer may briefly stop a person and restrain his freedom to walk away. When a police officer observes "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person[] with whom he is dealing may be armed and presently dangerous, . . .", he may stop the person and perform a limited search for weapons. 392 U.S. at 30. The Court made clear that such a stop-and-frisk is not an arrest, and need not be based on probable cause. 392 U.S. at 25–27.

■ Later cases have made clear that the scope of the intrusion permitted by *Terry* is narrow. For instance, the Court held in *Dunaway v. New York*, 442 U.S. 200 (1979), that the *Terry* exception did not apply when a person was taken from a neighbor's home to a police car, transported to the police station, and placed in an interrogation room. *Id.* at 212–13. In that case, the Court held that even though the treatment of the person had not been characterized by the police as an arrest, it was the equivalent of an arrest and had to be supported by probable cause. *Id.* at 214.

■■ We have previously stated that it is not necessary for a police officer to tell a person that he is under arrest in order for an arrest to occur. *State v. Lemire*, 121 N.H. 1, 4, 424 A.2d 1135, 1137 (1981). To constitute an arrest, "there must exist 'an intent on the part of the arresting officer to take the person into custody and a corresponding understanding by the person arrested that he is in custody.'" *Id.*, 424 A.2d at 1137 (citation omitted). We must examine the circumstances of each case to determine whether an arrest has occurred. *Id.*, 424 A.2d at 1137.

The defendant argues that Officer Dowd's actions constituted an

arrest because the police officer controlled the defendant's actions and because the defendant was not free to leave. It is clear that when a person is stopped pursuant to *Terry* he is not free to leave. 392 U.S. at 16. We do not believe, however, that the police officer's order to the defendant to step away from the car indicated that the defendant had been arrested. *Cf. Pennsylvania v. Mimms*, 434 U.S. 106, 111 (1977) (police officer's order to get out of car was a *de minimus* intrusion).

■■ We believe that the trial court correctly held that the conduct of Officer Dowd constituted a lawful investigatory stop and not an arrest. Evidence introduced at the suppression hearing indicated that Officer Dowd did not intend to arrest the defendant because he felt he lacked probable cause, and did not tell the defendant that he was placing him under arrest. While the words "you're under arrest" are not required, for an arrest, *State v. Lemire*, 121 N.H. at 4, 424 A.2d at 1137, the absence of such words may indicate that the person has only been detained. *United States v. Richards*, 500 F.2d 1025, 1029 (9th Cir. 1974), *cert. denied*, 420 U.S. 924 (1975). We find no circumstances, in this case, similar to those in *Dunaway*, which would indicate that the defendant, in fact, had been arrested.

■■ Because we hold that the actions of Officer Dowd did not constitute an arrest, it follows that probable cause was not required to stop and frisk the defendant. As discussed above, the relevant standard for a stop-and-frisk pursuant to *Terry* is whether the police officer has observed "unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot and that the person[] with whom he is dealing may be armed and presently dangerous. . . ." 392 U.S. at 30; *cf. Michigan v. Long*, 103 S. Ct. 3469, 3479 (1983) (*Terry* not limited to search of person detained). The defendant does not contend that this standard was not met in this case, and we believe that the standard was clearly satisfied.

The second issue raised by the defendant is whether the trial court abused its discretion in admitting into evidence the gun seized from the defendant and the testimony of a ballistics expert regarding ballistics tests he performed on the gun. The ballistics expert testified that he was unable to reach a conclusion about whether the bullet recovered from the victim's body was fired from the defendant's gun, because most markings on the bullet had been obliterated, but that the class characteristics of the bullet were consistent with class characteristics of a test bullet fired from the defendant's gun. The defendant argues that because the expert was able to state only

that there was a *possibility* that the defendant's gun had fired the bullet, the gun and the expert's testimony were of extremely minimal probative value. He contends that the prejudicial effect of the gun and the expert testimony outweighed their probative value, and therefore claims that the testimony should not have been admitted.

██ ██ A trial judge has broad discretion to admit evidence. *State v. Thresher*, 122 N.H. 63, 71, 442 A.2d 578, 582 (1982). In determining whether evidence should be admitted, the trial court must balance the potential prejudicial effect of the evidence against its probative value. *State v. Fernald*, 123 N.H. 442, 444, 462 A.2d 122, 124 (1983); *State v. Donovan*, 123 N.H. 446, 447, 462 A.2d 125, 126 (1983). His decision to admit evidence will be upheld unless he is found to have abused his discretion. *State v. Fernald*, 123 N.H. at 444, 462 A.2d at 124.

We do not agree that the evidence had extremely minimal probative value merely because the expert could not conclude that the defendant's gun had fired the bullet. We held in *State v. Farrow*, 118 N.H. 296, 307, 386 A.2d 808, 815 (1978), that it was not an abuse of discretion to admit testimony that hair which was found on the body of the victim was similar to hair of the defendant even though the witness could not positively identify the hair as that of the defendant. In *Farrow*, we stated that the *weight* to be given to the evidence was to be determined by the finder of fact, but that the evidence was clearly relevant and its admission not so prejudicial as to constitute an abuse of discretion. *Id.* at 307, 386 A.2d at 815.

██ The defendant attempts to distinguish *Farrow* by arguing that the evidence in this case was more inherently prejudicial than the evidence in *Farrow* because it concerned a gun. While we acknowledge that the admission of a gun and testimony concerning it may be more prejudicial than testimony about hair, we cannot say that the prejudicial effect of the disputed evidence outweighed its probative value so as to constitute an abuse of discretion. Therefore, the evidence was properly admitted by the trial court.

We note that a number of other jurisdictions have permitted the admission of a gun or expert testimony regarding ballistics tests on similar facts. *State v. Edgin*, 110 Ariz. 416, 418–19, 520 P.2d 288, 290–91 (1974); *State v. Hatton*, 522 P.2d 64, 69 (Idaho 1974); *Collins & Hickland v. State*, 266 Ind. 430, 434–35, 364 N.E.2d 750, 753 (1977).

The defendant's final argument concerns the sufficiency of the evidence introduced by the State to show premeditation and deliberation. The defendant was charged with first degree murder in that "he did purposely cause the death of Raymond Breault by shoot-

ing [him] in the head one (1) time with a revolver. . . ." RSA 630:1-a, II, defines the word "purposely" as used in the first degree murder statute as meaning that "the actor's conscious object is the death of another, and that his act or acts in furtherance of that object were deliberate and premeditated." The defendant argues that there was insufficient evidence for the jury to find beyond a reasonable doubt that he acted with deliberation and premeditation in killing Raymond Breault, and that therefore the court erred in denying his motions to dismiss and to set aside the verdict.

The standard for determining the sufficiency of evidence to support the jury's finding that the defendant acted with deliberation and premeditation is whether, considering the evidence in the light most favorable to the prosecution, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Sadvari*, 123 N.H. 410, 413, 462 A.2d 102, 103 (1983); *State v. Martin*, 121 N.H. 1032, 1033–34, 437 A.2d 308, 309 (1981).

The State points to several pieces of evidence to support its position that there was sufficient evidence of deliberation and premeditation. Specifically, it cites the testimony of three persons concerning the defendant's statements after the shooting. Mildred Butler, the wife of the defendant's half-brother, testified that the defendant arrived at her apartment on the night of the shooting and confessed to shooting a cab driver. She testified that the defendant said he originally planned to rob a store, but that the store was closed. She further testified that the defendant said that when he discovered the store was closed, he noticed the cab driver and "he figured if he had enough balls to rob the store he had enough balls to do that."

Robert Butler, the defendant's half-brother, testified that the defendant told him that he had gone home, gotten a gun, and went out to "collect some money." According to Butler, the defendant said, to explain why he had shot the cab driver: "Why not a cabbie. They do it all the time in Boston." Butler then testified that the defendant said he walked up to the cab, tapped the gun on the window and pulled the trigger when the driver looked up.

Gary Layne, a friend of Robert Butler, testified that he met the defendant the afternoon after the shooting. He stated that the defendant said he shot the cab driver because he was mad because "he wanted to pull a job and he couldn't do it and he was all frustrated."

The defendant contends that each witness' testimony was consistent with the theory that the defendant intended to commit robbery, but that the testimony was insufficient to establish beyond a reasonable doubt that the defendant acted with deliberation and premeditation in killing Raymond Breault. The State concedes that the wit-

nesses' statements are susceptible of more than one interpretation, but argues that it was the province of the jury to decide whether these statements showed premeditation and deliberation.

 We agree with the State's argument. Viewed in the light most favorable to the State, the jury could have found beyond a reasonable doubt that the defendant acted with deliberation and premeditation. Although the context of the defendant's statement was unclear from Mildred Butler's testimony, both Robert Butler's and Gary Layne's testimony was probative of deliberation and premeditation. Robert Butler's testimony that the defendant said: "Why not a cabbie. They do it all the time in Boston," was in response to a line of questions about why the defendant had killed the cab driver. Similarly, Gary Layne testified that the defendant said he had killed the cab driver because he was mad and frustrated because he wanted to rob a store but was unable to. When considered in light of the fact that the defendant did not rob the victim, but left the victim's money bag lying on the front seat of the cab, a jury could have determined that the defendant's statements reflected deliberation and premeditation.

 We have also indicated that the type of weapon used and the location of the wounds may be considered to determine if there was deliberation and premeditation. *State v. Sadvari*, 123 N.H. at 413, 462 A.2d at 104. In this case, the defendant used a deadly weapon, a gun, to kill the victim. The fact that the defendant shot the victim in the head is also significant because the brain is a vital organ. 123 N.H. at 413, 462 A.2d at 104. Considering these factors, in addition to the testimony discussed above, we believe that a rational trier of fact could have found beyond a reasonable doubt that the defendant acted with deliberation and premeditation in killing Raymond Breault.

 The defendant argues that he was unable to deliberate and premeditate the murder because he was highly intoxicated. The jury was instructed on the relevance of intoxication to deliberation and premeditation but chose to reject the defendant's argument. It was the province of the jury to determine whether intoxication negated deliberation and premeditation, *State v. Goodwin*, 118 N.H. 862, 867, 395 A.2d 1234, 1237 (1978); *see* RSA 626:4, and we will not disturb its finding.

*Affirmed.*

Bois, J., did not sit; the others concurred.