Merrimack
No. 84-292

## The State of New Hampshire

### v.

### Gary Place

June 17, 1985

*Stephen E. Merrill,* attorney general (*Brian T. Tucker,* assistant attorney general, on the brief and orally), for the State.

*James E. Duggan,* appellate defender, of Concord, by brief and orally, for the defendant.

Douglas, J.   The sole issue presented on appeal is whether there was sufficient evidence to warrant a finding that the defendant acted with premeditation and deliberation so that a jury could find him guilty of first degree murder. RSA 630:1-a. We hold that there was sufficient evidence and affirm.

The following facts were brought out at trial. During early 1983, the defendant, Gary Place, became acquainted with the victim, Wanda Olsen. At that time, Place, then age 34, was still married to Diana Place but was in the process of obtaining a divorce. Gary and Diana Place had been married since 1976, and had one child from that marriage and another child from a previous marriage of Diana Place. The marriage had involved frequent separations, until Diana finally left in January 1983. Diana's desire to end the marriage was in part based on Gary Place's extreme jealousy, obsessive cleanliness, depression and violent temper.

Gary Place and Wanda Olsen became engaged in April 1983. Place gave Olsen a diamond engagement ring, and in July the defendant moved in with her. Shortly afterward they had an argument about the fact that Place's divorce was still pending, even though they had scheduled their wedding for October. Olsen told Place to pack his things and leave. Place put his clothes into two plastic garbage bags and immediately went to his sister's home.

Olsen and Place did not see each other for a week. He called her on July 16, a Saturday, and she invited him over to her apartment to spend the night. He stayed with her Saturday and Sunday nights. On Sunday, Olsen told Place that he "could see her possibly on Wednesday nights, Saturday nights and Sunday nights." Place agreed. On Monday, however, Olsen asked Place to come over to her apartment to repair a sliding glass door. After he finished, Olsen announced that she had put the diamond back on and that they were engaged once again. Place saw Olsen again on Tuesday night and stayed over on Wednesday night.

On Thursday, July 23, 1983, Place left very early from Olsen's apartment to drive to work in Massachusetts. By late afternoon, he and a co-worker had returned to Manchester. They had a couple of drinks and Place drove to Concord to his sister's house.

About 6:30 p.m. Place telephoned Olsen. They were on the phone for a half-hour to forty-five minutes. Olsen told Place that the engagement was over and that she wanted to see him only twice a month and hung up.

Place immediately left his sister's house, telling her that he was going over to Olsen's to get an explanation. He was "upset." As he left, his sister said, "Don't do anything you're going to be sorry for."

Forty minutes later, Place returned to his sister's and said, "I stabbed her." Place then gave his sister his wallet containing money for his children and drove to the Concord police station. At 8:55 p.m., Gary Place walked into the police station and said to Officer Robert Libby: "I killed somebody. I have nothing to hide. All I want is to have my execution date set." In response to Libby's question

about where he should send an ambulance, the defendant replied that medical assistance would not be necessary because "I made sure she was dead before I left."

As for the events that occurred in Wanda Olsen's apartment, Place drove to the apartment, went to Olsen's door and knocked. There was no answer. He then went outside and scaled the wall of the apartment building to the second floor balcony outside Olsen's apartment. Once on the balcony, he tried to enter through the sliding glass door, but it was locked. He then noticed that a bedroom window was open and jumped down to the grass and then again climbed up the building to a ledge under the window. He pushed open the window and entered Olsen's bedroom. As Place walked out of the bedroom, he met Olsen, and an argument ensued.

When the police arrived at Wanda Olsen's apartment, they found her dead in her bedroom. A cord was wrapped around her neck several times and she appeared to have been stabbed. A knife lay on the foot of her bed. An autopsy confirmed that she had been strangled with an electrical extension cord and stabbed seven times in the heart.

Place was indicted for first degree murder with premeditation and deliberation. At trial the defendant challenged the sufficiency of the evidence of premeditation and deliberation and relied on the defense of insanity based on PTSD, post-traumatic stress disorder related to his experiences in Vietnam.

The jury was instructed by the Court (*Cann*, J.) on first degree murder, second degree murder, manslaughter and insanity. They returned a verdict of guilty of first degree murder.

■ "In determining the sufficiency of the evidence to support the jury's verdict, we must consider the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Sadvari*, 123 N.H. 410, 413, 462 A.2d 102, 103–04 (1983); *State v. Hamel*, 123 N.H. 670, 678, 466 A.2d 555, 559 (1983). In doing so, we consider all of the evidence. *State v. Elbert*, 125 N.H. 1, 12, 480 A.2d 854, 860 (1984).

■ ■ We have defined the elements of premeditation and deliberation necessary to prove first degree murder:

> "'There must be not only intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the

> matter, for choice to kill or not to kill, and for the forma-
> tion of a definite purpose to kill. And when the time
> is sufficient for this, it matters not how brief it is. The
> human mind acts with celerity which it is sometimes
> impossible to measure; and whether a deliberate and
> premeditated design to kill was formed, must be deter-
> mined from all the circumstances of the case.'"

*State v. Greenleaf,* 71 N.H. 606, 613–14, 54 A. 38, 42 (1902) (quoting *People v. Majone,* 91 N.Y. 211, 212 (1883)); *State v. Elbert, supra* at 11–12, 480 A.2d at 860.

In the present case, the defendant contends that the evidence is consistent with his theory that he killed Wanda Olsen in a state of frenzy and that there was insufficient evidence of premeditation or deliberation to sustain a verdict of first degree murder.

In support of this contention, the defendant points to evidence that he had stayed with the victim on three of the six nights prior to the killing and concludes that "[s]uch recent intimacy belies an inference of premeditation and deliberation." He further states that he did not try to conceal the fact that he was going to Olsen's apartment. He told his sister where he was going and scaled a wall up to her apartment in plain view of several bystanders.

Further, he brought no weapon with him to Olsen's apartment, but instead tore out an electrical cord and used this to strangle her after he became angered when she would not return his engagement ring. The defendant also contends that his conduct after the killing is inconsistent with first degree murder. He did not flee, hide, or make any attempt to cover up his crime, but instead immediately surrendered to police.

The State counters with the following evidence of premeditation and deliberation. Three police officers and a civilian, present at the police station when the defendant surrendered, testified that the defendant stated: "I made sure she was dead before I left." They also testified that he did not appear drunk or on drugs, but was calm. The booking officer also stated that the defendant told him that he had been in Vietnam and had killed before and that he knew how to kill.

In a conversation with his estranged wife on the day after the slaying, the defendant told her that when Olsen refused to give the ring back, he grabbed her by the throat. She testified that he told her that "he knew (Olsen) was dying, that she looked at him, like, 'Why are you doing this to me?' Afterwards, he said he had to make sure she was dead, so he went into the kitchen and got a knife and stabbed her several times."

A prisoner in the holding cell with the defendant also testified that the defendant told him that after arguing with the victim, he strangled her. The defendant then "figured she would get him for attempted murder . . . so he stabbed her and got it over with." Another prisoner testified that the defendant said that he had "no regrets" about the killing.

The State points to evidence other than admissions by the defendant which, it contends, demonstrates premeditation and deliberation. The electrical cord was wrapped tightly around the defendant's neck several times. After the defendant strangled Olsen, he went into the kitchen and got a sharp paring knife. Olsen's roommate testified that Olsen never used this knife and that it was kept underneath duller steak knives in a kitchen drawer. The defendant then returned to the victim's bedroom and stabbed her in the heart seven times.

■ This court has specified the type of evidence, even though it is circumstantial, which may be weighed in determining whether there was premeditation and deliberation:

> "The character of the weapon employed, the force and number of blows inflicted, the location and severity of the wounds, the place of the crime, previous remarks and conduct indicating preparation, subsequent acts and statements, and every circumstance having a legitimate bearing upon the subject, may be considered by the jury."

*State v. Greenleaf*, 71 N.H. 606, 614–15, 54 A. 38, 43 (1902); *State v. Sadvari*, 123 N.H. 410, 413, 462 A.2d 102, 104 (1983).

■ The State's evidence is the type which demonstrates premeditation and deliberation. Considering this, together with the evidence presented by the defendant, in the light most favorable to the State, a reasonable jury could have found beyond a reasonable doubt that the defendant acted with premeditation and deliberation when he killed Wanda Olsen.

*Affirmed.*

All concurred.