THE STATE OF NEW HAMPSHIRE

v.

MICHAEL C. HERRICK

November 15, 1990

*John P. Arnold*, attorney general (*Cynthia L. White*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, chief appellate defender, of Concord, by brief and orally, for the defendant.

THAYER, J. After a jury trial in Superior Court (*Mangones*, J.), the defendant, Michael C. Herrick, was convicted of first degree murder. RSA 630:1-a. The issue presented on appeal is whether there was sufficient evidence of premeditation and deliberation to support the jury's verdict. We affirm.

The record discloses that on October 22, 1987, the defendant shot and killed Neil Ryan in Concord with a .357 magnum revolver that he had purchased that morning. The defendant and Ryan were acquaintances, and apparently Ryan owed the defendant $55. Several months before the shooting, the defendant arranged with his landlord to obtain an illegal inspection sticker from Ryan for the defendant's car. The defendant paid Ryan $20, but Ryan failed to obtain the sticker and never repaid the defendant. The defendant told the landlord that he would "take care of it [him]self" and indicated that Ryan also owed him an additional $35.

In July of 1987 the defendant observed Ryan driving past the defendant's apartment in a brown car, and he remarked that he thought Ryan was trying to avoid him by driving someone else's vehicle, rather than his own pick-up truck. On another occasion that same summer, the defendant saw Ryan drive by while the defendant was a passenger in another car. The defendant told the driver to follow Ryan so that he could collect his debt, but the driver refused, not wanting to get into "a hassle."

On the day of the killing, the defendant bought the .357 magnum revolver used to shoot Ryan. The seller asked the defendant if he was interested in buying a stolen gun. The defendant examined the gun, opened the chamber, which was unloaded at the time, cocked the hammer and let it down so as not to ruin the firing pin. The defendant bought the gun and some bullets for $75 and put the gun in a paper bag under the seat of the car he was driving. That same day, the defendant showed the gun to a friend named Zankowski, who offered to buy it or trade it for a shotgun. The defendant refused. Later the defendant told Zankowski that he was upset because someone owed him money.

Around 5:30 p.m. that evening, the defendant visited the trailer of another friend, Dahood, to show him the gun, again opening the chamber to indicate that it was unloaded and carefully cocking and releasing the hammer. The defendant then left to drive to Manchester with his friend Hall, stopping briefly at the defendant's trailer so he could change jackets. Driving down Manchester Street in Concord, the defendant saw Ryan's pick-up truck and, commenting "that's the guy that owes me some money," reversed direction and followed Ryan. When Ryan pulled into a Getty gas station, the defendant pulled off the side of the road to wait. Ryan and his two companions, all seated in the cab of Ryan's truck, noticed the defendant staring at them and pulled out of the Getty station and turned onto Old Suncook Road to see whether defendant's car was following them. When the defendant proceeded to drive up behind Ryan, Ryan stopped the truck and parked.

The defendant took his gun from under the driver's seat and said he was "going to see if the guy has got the money he owe[d] him." The defendant asked Ryan through the open window of the truck for his money. Ryan responded that he would have it the next day when he got paid. The defendant asked Ryan for his wallet, and when Ryan refused, the defendant warned, "you don't want to f--- around with me," pushed the .357 magnum revolver through the window into the truck, cocked the trigger and pointed it at Ryan's head, holding it only a few inches away. Ryan pushed the defendant's arm away but the defendant forced the gun back, pushed it into the side of Ryan's back and fired. The bullet penetrated Ryan's lungs and severed his aorta and vena cava, causing extensive bleeding in his chest killing him almost instantly. The gun was fired so close to Ryan's arm that the gases and heat from the gun burned a hole through Ryan's shirt and into his arm. The bullet exited Ryan's body and struck Todd

Calley, sitting in the passenger seat of the truck, piercing his left arm and grazing his chest.

The defendant walked back to the car and drove to his trailer, where he put the gun and bullets into a bag and walked with it behind the trailer, returning empty handed. He then shaved his beard and cut his hair before going to work at 11:00 p.m. that evening. The defendant later told the friend whose car he was driving at the time of the killing to change his car tires because the police were taking tire prints. The defendant told the individual who had sold him the gun not to speak with the police, and made threatening statements concerning those persons who had already given statements to the police.

After the defendant was arrested, a search of his trailer uncovered some long dark hair in the trash and a composite drawing of the shooter's face cut out of the newspaper on which a beard and mustache had been drawn. The black leather jacket and white cowboy hat which the defendant allegedly was wearing at the time of the shooting were never found. The gun was recovered by the defense investigator underneath an abandoned car in a junkyard near the defendant's trailer five months after the shooting.

On appeal, the defendant contends that the evidence at trial was insufficient to prove the elements of premeditation and deliberation required for a conviction of first degree murder. We disagree.

■■ The evidence must be considered in the light most favorable to the State, *State v. Elbert*, 125 N.H. 1, 12, 480 A.2d 854, 860 (1984), and the jury's verdict upheld unless no rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Sadvari*, 123 N.H. 410, 413, 462 A.2d 102, 103–04 (1983); *State v. Martin*, 121 N.H. 1032, 1033–34, 437 A.2d 308, 309 (1981). The defendant has the burden of showing that the evidence was insufficient to prove guilt. *State v. Smith*, 127 N.H. 433, 436, 503 A.2d 774, 776 (1985); *State v. Burke*, 122 N.H. 565, 569, 448 A.2d 962, 964 (1982).

■ The elements of premeditation and deliberation require that

"[t]here must be not only an intention to kill, but there must also be a deliberate and premeditated design to kill. Such design must precede the killing by some appreciable space of time. But the time need not be long. It must be sufficient for some reflection and consideration upon the matter, for choice to kill or not to kill, and for the formation of a definite purpose to kill. And when the time is sufficient for this, it

> matters not how brief it is. The human mind acts with celerity which it is sometimes impossible to measure; and whether a deliberate and premeditated design to kill was formed, must be determined from all the circumstances of the case."

*State v. Greenleaf,* 71 N.H. 606, 613–14, 54 A. 38, 42 (1902) (quoting *People v. Majone,* 91 N.Y. 211, 212 (1883)). Sufficient proof of these elements may rest on inferences drawn from specific factors identified by this court, which include: "[t]he character of the weapon employed, the force and number of blows inflicted, the location and severity of the wounds, the place of the crime, previous remarks and conduct indicating preparation, subsequent acts and statements, and every circumstance having a legitimate bearing upon the subject. . . ." *State v. Sadvari, supra* at 413, 462 A.2d at 104 (quoting *State v. Greenleaf, supra* at 614–15, 54 A. at 43).

In support of his contention that there was insufficient evidence of premeditation and deliberation to sustain a verdict of first degree murder, the defendant points first to evidence regarding the weapon and resulting wound. He argues that although a deadly weapon was used, only one shot was fired and that shot was not aimed at a vital organ but rather into the victim's back near the underarm, thereby creating a substantial risk of causing death but not evidencing a preconceived plan to kill. Second, the defendant suggests that the victim chose the location of the crime, which evidenced a lack of planning by the defendant, and that the presence of two other people with Ryan was inconsistent with a premeditated killing. Third, there is no evidence that the defendant had previously threatened to kill the victim, and the defendant argues that his prior statements concerning Ryan exhibited merely his intention to collect the money Ryan owed him. Finally, the defendant's subsequent conduct of concealing the weapon, changing his appearance and persuading others not to talk to the police evidenced behavior consistent with someone at fault in killing another person, but failed to indicate premeditation before the fact. This evidence, according to the defendant, supports a finding that the defendant intended to scare Ryan and possibly intended to kill him, but falls short of constituting premeditation and deliberation.

The State counters by pointing to the following evidence. First, regarding the character of the weapon employed, the defendant used a .357 magnum revolver, a weapon which is more powerful and causes greater damage than a low-caliber handgun. The gun was un-

loaded when the defendant bought it and was still unloaded at about 5:30 p.m., approximately one-half hour before the killing. When the defendant followed Ryan down Old Suncook Road and parked in front of Ryan's truck, he took the .357 magnum revolver, then fully loaded, with him when he confronted Ryan to demand payment of the $55. The defendant shot Ryan at point blank range in the torso, where the vital organs are concentrated. *See State v. Sullivan*, 131 N.H. 209, 217, 551 A.2d 519, 525 (1988) (firing gun from position maximizing likelihood bullet would strike vital organ indicates premeditation and deliberation); *State v. Hamel*, 123 N.H. 670, 679, 466 A.2d 555, 560 (1983) (shooting victim in brain significant to show premeditation and deliberation). There was no need to fire more than one shot to kill Ryan, as the path of the bullet through several organs killed him almost immediately. *See State v. Elbert*, 125 N.H. at 7, 12, 480 A.2d at 856, 860 (premeditation and deliberation found where single shot fired by defendant); *State v. Hamel, supra* at 679, 466 A.2d at 560 (premeditation and deliberation demonstrated by single shot).

■■ Second, the State contends that in fact the defendant and not Ryan decided the location of the crime by waiting for Ryan to leave the Getty station and following him down the isolated side road. The defendant did not need to load the weapon if he only intended to frighten Ryan. The jury could reasonably infer that by loading the gun, bringing it with him when he approached Ryan's truck, and cocking the hammer, the defendant intended to use the gun if he was not given the money. It was the province of the jury to reject the proposition that the presence of eyewitnesses was inconsistent with a premeditated killing. *See State v. Shackford*, 127 N.H. 695, 699, 506 A.2d 315, 317 (1986) (evidence of killing before eyewitnesses does not preclude finding of premeditation and deliberation). Third, from the defendant's conduct from the time he recognized Ryan at the Getty station to the time he shot and killed him, a reasonable inference of premeditation and deliberation could be drawn. "While the object of the requirement [of premeditation and deliberation] is to rule out action on sudden impulse, no particular period of premeditation and deliberation is required." *State v. Elbert, supra* at 12, 480 A.2d at 860.

■■ Finally, the defendant's flight from the scene may be considered as indicative of premeditation and deliberation. *See State v. Sullivan, supra* at 217, 551 A.2d at 524–25 (defendant's subsequent flight from the murder scene strongly indicates premeditation and

deliberation). Evidence that the defendant failed to seek help for the victim after the shooting, changed his appearance, hid evidence, and threatened witnesses were "subsequent acts and statements" to be taken into account by the jury. "When circumstantial evidence is susceptible to more than one reasonable interpretation . . . it is the province of the jury to decide whether the evidence as a whole supports the material elements of the crime beyond a reasonable doubt." *State v. Wong*, 125 N.H. 610, 624, 486 A.2d 262, 271 (1984).

 Considering the evidence in the light most favorable to the State, when the defendant abandoned his plans to go to Manchester and instead followed Ryan down Old Suncook Road, loaded his .357 magnum revolver, pulled out the gun, cocked it, aimed it at Ryan's head, then forced the gun into Ryan's back and pulled the trigger, a reasonable jury could have found beyond a reasonable doubt that the defendant acted with premeditation and deliberation when he killed Neil Ryan.

*Affirmed.*

HORTON, J., did not sit; the others concurred.