Merrimack
No. 96-212

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN DUGUAY

July 28, 1997

*Steven M. Houran*, acting attorney general (*Joseph N. Laplante*, assistant attorney general, on the brief and orally), for the State.

*Albert E. Scherr*, Franklin Pierce Law Center, of Concord, by brief and orally, for the defendant.

HORTON, J. Following a jury trial in Superior Court (*Manias, J.*), the defendant, Stephen Duguay, was convicted of two counts of attempted murder, *see* RSA 629:1 (1996) (attempt); RSA 630:1-a (1996) (first degree murder), and one count each of attempted arson, *see* RSA 634:1 (Supp. 1993), and attempted falsification of evidence, *see* RSA 641:6 (1996). Each indictment identified the defendant as "accomplice/principal" and charged him with acting "in concert with and aided by" Jay Laudarowicz. On appeal, the defendant argues that the superior court erred in denying his motions to dismiss and for directed verdicts on the attempted murder charges for insufficient evidence of the defendant's conduct and intent. We affirm.

At trial, the State presented evidence of the following facts. On June 17, 1994, at approximately 9:30 in the evening, Justin Mann and Kimberly Waterfield were parked off a dirt road near Garvins Falls Road in Concord. While parked there, Justin Mann heard "a gunshot that sounded fairly close." As a result, he and Waterfield decided to leave the area. About ten to twenty seconds later, as Mann put the car in reverse and looked over his right shoulder to back up, a bullet from a second shot struck the passenger-side window of the car. The bullet hit Mann in the left cheek and shattered his jaw. Waterfield, who was sitting in the front passenger's seat, received various facial cuts from the shattered glass. With Mann screaming in pain and with concerns about their safety if they remained in the car, Mann and Waterfield ran to Garvins Falls Road. They eventually summoned help from nearby residents, who called the police and obtained an ambulance.

During the ensuing investigation, the police discovered two sets of shoe prints in the sandy area of the shooting. One set of shoe prints was the product of Nike sneakers; the other set revealed a waffle or wavy pattern. The two sets of shoe prints, found relatively close to each other, pointed in the same directions — both leading to the car and proceeding away from the car. Examination of particular footwear impressions leading toward the car indicated that the waffle shoe prints were created first.

In examining the car, the police discovered that the gas cap had been removed and further found burned pieces of paper in its place. The police subsequently retrieved two spent shell casings from a .22 rifle. The shell casings were found approximately twenty-three yards from the car, at a concealed location in direct line with the car.

After investigation of the shooting focused on the defendant, the police executed a search warrant at the defendant's residence. The police found a .22 scoped magnum rifle concealed in a cut-out portion of the ceiling. The rifle, which was owned by the defendant's father, contained only three rounds in its five-round clip. The police also recovered a pair of sand-covered sneakers in a "false wall." The soles of the sneakers matched the waffle or wavy prints left at the scene of the shooting; Nike sneakers matching the Nike shoe prints in the area of the shooting were recovered from Laudarowicz's residence. The search at the defendant's residence further uncovered boxes of shell cartridges that were capable of being fired from the .22 rifle and that were consistent with the spent casings found in the vicinity of the shooting. Subsequent testing conclusively linked the shell casings found at the scene of the shooting with the .22 rifle found at the defendant's residence.

Prior to completing the search of the defendant's residence, the police began interviewing the defendant in connection with the shooting. The defendant initially asserted that he was at home at the time of the shooting and that Laudarowicz subsequently arrived to request the defendant's help in concealing the rifle and ammunition. The defendant also denied that the rifle was his and maintained that he had no idea how Laudarowicz obtained it. When informed of the discovery of sand-covered sneakers in his house, the defendant claimed that Laudarowicz or someone else might have worn the shoes without his knowledge.

Confronted by the police with the implausibility of that explanation, the defendant acknowledged that he was in the vicinity at the time of the shooting and that he heard the shots and resulting screams. The defendant asserted, however, that he neither fired the shots nor observed the shooting by Laudarowicz. According to the

defendant, he and Laudarowicz were walking in the area together before the shooting, but later became separated when Laudarowicz decided to proceed on his own; approximately twenty minutes later, the defendant heard the gunshots and screams, walked toward the commotion, encountered Laudarowicz at the car, and learned from Laudarowicz that Laudarowicz had fired the shots. The defendant admitted that he threw the keys from the car into bushes, that he participated in taking the rifle to his house, and that he and Laudarowicz returned the next day to look for the spent shell casings.

Additional evidence adduced at trial established that the defendant was skilled in the use of firearms and was an excellent shot with the .22 rifle. An acquaintance of the defendant testified that the rifle was one of the defendant's favorite guns. Laudarowicz, in contrast, had minimal familiarity with firearms.

At the conclusion of the State's case, the defendant moved to dismiss all of the charges for insufficient evidence; the motion was combined with a motion for directed verdicts on all of the charges. The trial court denied the motions, and the jury subsequently found the defendant guilty on all counts. On appeal, the defendant challenges only the sufficiency of the evidence to support the attempted murder convictions. He argues that the circumstantial evidence of his actions and intent did not exclude all rational conclusions except guilt.

As noted, the applicable indictments charged the defendant as "accomplice/principal" for acting "in concert with and aided by" Laudarowicz. We have previously held that "in concert with" indictment language is sufficient to charge a defendant "as either a principal or accomplice." *State v. Thresher*, 122 N.H. 63, 69, 442 A.2d 578, 581 (1982).

Our Criminal Code essentially "eradicat[es] the distinctions between principal and accomplice," *id.*, by providing that "[a] person is guilty of an offense if it is committed by his own conduct or by the conduct of another person for which he is legally accountable, or both." RSA 626:8, I (1996). A person is legally accountable for another person's conduct if "[h]e is an accomplice of such other person in the commission of the offense." RSA 626:8, II(c) (1996). A person is an accomplice of another person if "[w]ith the purpose of promoting or facilitating the commission of the offense, he . . . aids or agrees or attempts to aid such other person in planning or committing it." RSA 626:8, III(a) (1996). Further, "[w]hen causing a particular result is an element of [the substantive] offense," the State must establish that the alleged accomplice

acted "with the kind of culpability, if any, with respect to that result that is sufficient for the commission of the offense." RSA 626:8, IV (1996).

■ The substantive offense in this case, attempted murder, requires a purpose to cause the death of another. *See State v. Allen*, 128 N.H. 390, 396, 514 A.2d 1263, 1267 (1986). Accordingly, the State was required to prove beyond a reasonable doubt either that the defendant fired the shots with the purpose to cause the deaths of Waterfield and Mann, or that the defendant aided Laudarowicz in firing the shots with the purpose to cause their deaths.

■ "In an appeal challenging the sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence most favorably to the State, could have found guilt beyond a reasonable doubt." *State v. Prevost*, 141 N.H. 647, 652, 690 A.2d 1029, 1033 (1997) (quotation omitted). When the evidence presented to prove an element of the offense is solely circumstantial, that evidence "must exclude all rational conclusions except guilt." *State v. Laudarowicz*, 142 N.H. 1, 5, 694 A.2d 980, 983 (1997) (quotation omitted); *see State v. Newcomb*, 140 N.H. 72, 80-81, 663 A.2d 613, 619 (1995). Under this standard, we still consider the evidence in the light most favorable to the State, and we "examine each evidentiary item in the context of all the evidence, not in isolation." *State v. Richardson*, 141 N.H. 139, 141, 679 A.2d 565, 566 (1996) (quotation omitted).

■ We conclude that there was sufficient evidence for the jury to exclude all rational conclusions except guilt. With regard to the defendant's actions, the shoe print evidence and the defendant's own statement placed him at the scene of the shooting. Additional evidence supports the jury's conclusion that the defendant's involvement exceeded "[m]ere presence." *State v. Goodwin*, 118 N.H. 862, 866, 395 A.2d 1234, 1236 (1978). For example, the defendant and Laudarowicz were acquaintances, and Laudarowicz had been staying at the defendant's house in the days preceding the shooting. *See id.* (reasoning that defendant and principal were friends). Further, they traveled together to the area of the shooting armed with the rifle and ammunition. *See Laudarowicz*, 142 N.H. at 6, 694 A.2d at 984 (relationship and accompaniment "may be viewed as suggesting encouragement" for accomplice liability); *State v. Pierce*, 126 N.H. 84, 87, 489 A.2d 109, 111-12 (1985) (prior meetings and conversations between defendant and others indicative of defendant's participation for accomplice liability). The defendant had free access to, and

was proficient with, the instrumentalities crucial for the offenses — the rifle and the ammunition. *See Goodwin,* 118 N.H. at 866, 395 A.2d at 1236-37 (defendant's ownership of instrumentalities used in crimes indicative of accomplice liability). Moreover, the jury could reject as incredible the theory ultimately advanced by the defendant in his interview with the police: that his shoe prints were found near the car because he walked *toward* the commotion *after* hearing gunshots and screams. In fact, the proximity of the two sets of shoe prints generally indicated that the defendant and Laudarowicz acted together, with certain footwear impressions further suggesting that the defendant led Laudarowicz to the car.

■ The circumstantial evidence also supports the jury's conclusion that the defendant acted with the purpose to cause the deaths of Waterfield and Mann. *See Laudarowicz,* 142 N.H. at 4, 694 A.2d at 983 (culpable mental state may be established by circumstantial evidence). In particular, the jury could infer a culpable mental state from the defendant's efforts to deceive the police, *see Laudarowicz,* 142 N.H. at 5, 694 A.2d at 983; *State v. Evans,* 134 N.H. 378, 387, 594 A.2d 154, 160 (1991); from his attempts to conceal evidence and to cover up his involvement, *see Evans,* 134 N.H. at 387, 594 A.2d at 160; *State v. Herrick,* 133 N.H. 694, 700, 582 A.2d 613, 616 (1990); and from his failure to help the victims upon hearing the screams, *see Herrick,* 133 N.H. at 700, 582 A.2d at 616. The jury could also find a purpose to kill from the nature of the weapon (a rifle with a sighting device), from the concealed location from which the shots were fired, and from the fact that the second shot struck Mann in the face. *See, e.g., id.* at 698, 582 A.2d at 615.

*Affirmed.*

All concurred.