Hillsborough-southern judicial district
No. 99-680

THE STATE OF NEW HAMPSHIRE

v.

PETER DUGAS

October 9, 2001

*Philip T. McLaughlin*, attorney general (*Stephen D. Fuller*, attorney, on the brief and orally), for the State.

*Raimo & Murphy, P.C.*, of Manchester (*Ray Raimo* on the brief), and *Shuchman & Krause-Elmslie, P.L.L.C.*, of Exeter (*Lawrence A. Vogelman* orally), for the defendant.

DUGGAN, J. The defendant, Peter Dugas, was convicted of arson, *see* RSA 634:1 (1996), following a jury trial. On appeal, he argues that the evidence was insufficient to sustain his conviction. The defendant also asserts that the Superior Court (*Hampsey*, J.) erred in: (1) admitting into evidence a statement he made to the Nashua Police Department; (2) excluding certain evidence; and (3) supplying the jurors with transcripts and audiotapes of his statements to the police as well as a videotape of himself, along with an audiotape and a videotape player. We affirm.

Just before midnight on October 23, 1998, the Nashua Fire Department responded to a building fire that had been reported by passersby. Upon arrival, the fire fighters found a fire inside a convenience store known as Dugas Superette. They gained entry through locked doors and determined that the fire was confined to the southeast corner of the basement.

After extinguishing the fire, fire personnel began an investigation to determine the exact cause and origin of the fire. They found no signs of forced entry into the building, no likely cause from electrical or mechanical systems, and no accidental cause. During the course of the investigation, an accelerant detection dog "alerted" on several papers that were part of business records stacked in the southeast corner of the basement. Testing of several samples revealed the presence of ignitable fluids, leading the investigators to conclude that the fire was intentionally set.

Dugas Superette is principally owned by Edgar Dugas, the defendant's father. In October 1998, the defendant managed the store and owned a minority share of the business. The store contained a basic grocery business with a fresh and fried seafood department run by the Dugases as well as separate concession areas for pizza and video rentals operated by others.

After responding to the scene, the fire department contacted the defendant's wife. She then notified the defendant who, at the time, was picking up his daughter at a movie theater near the store. The defendant

immediately responded and assisted the fire fighters by providing information about the building.

Later, the defendant consented to a search of the building by the police. In their search, the detectives noted that an electrically powered clock had stopped at 10:44. An investigator later determined that the wiring that powered the clock failed due to the heat of the fire. The detectives seized a videotape from the store's camera surveillance system. The defendant agreed to interviews at the fire scene and later the next morning at the police station.

In a tape-recorded interview at the police station, the defendant described his role as manager of the store. He also described the two independently-operated concessions within the store, and identified and explained the role of each person who worked in the building the day of the fire. The defendant provided information regarding the store's security system, which included video cameras, motion detectors and alarms. The defendant then described his activities the day of the fire. He reported that he arrived at 8:00 a.m. and, except for an afternoon break, worked through the day, closing the store just after 10:00 p.m. He left with a pizza he had purchased from the pizza concession in the store and drove to the bank to make the night deposit. After arriving home, he ate, showered and then left to pick up his daughter at the movies.

During the interview, the defendant also reported that he was aware the building was covered by fire insurance but did not know what losses the policy covered or its limitations. When asked whether he had any problems with past employees, the defendant named Paul "P.J." Kulas. The police later determined that on October 23, 1998, Kulas and his family spent the evening dining at a restaurant in Nashua.

The police audiotaped a second interview with the defendant after they reviewed an enhanced version of the videotape seized from the store's surveillance camera video recorder. A camera located in the southeast corner of the store's main floor recorded activities within the store as they occurred at closing time on October 23, 1998. About three minutes after the lights were shut off and the defendant locked up the store, the defendant re-entered the store. He then proceeded to the rear office of the store, and exited the office within seconds. After leaving the office and turning off the light, the defendant disappeared from view for about one minute, then reappeared from the rear of the store and moved toward the front door. The defendant then walked very quickly back into the store. Thereafter the videotape recorded a blank field for approximately thirty minutes before it shut down completely.

In the second audiotaped interview, on November 12, 1998, the defendant again described his activities the evening of the fire. When

asked whether he re-entered the store, the defendant stated that he did not re-enter the store after closing and locking up. When the police confronted him with pictures taken from the videotape depicting his re-entry, he questioned the validity of the pictures and refused to say anything more than "I did not light the fire, did absolutely not light that fire."

The audiotapes of the interviews and the videotape of the events prior to the fire were marked as evidence and submitted to the jury for review during deliberations. The jury returned a guilty verdict and this appeal followed.

## I. Sufficiency of the Evidence

We first address the defendant's contention that the evidence was insufficient to support his conviction. "In an appeal challenging the sufficiency of the evidence, the defendant carries the burden of proving that no rational trier of fact, viewing the evidence [in the light] most favorabl[e] to the State, could have found guilt beyond a reasonable doubt." *State v. Duguay*, 142 N.H. 221, 225 (1997) (quotation omitted). The defendant does not challenge the State's evidence proving the fire was intentionally set; rather, he limits his challenge to the State's evidence proving he was the person who intentionally set the fire. This evidence he asserts was entirely circumstantial. "When the evidence presented is circumstantial, it must exclude all rational conclusions except guilt in order to be sufficient to convict." *State v. Flynn*, 144 N.H. 567, 569 (1999). Applying this standard, however, does not relieve the defendant of his burden in challenging the conviction; "we still consider the evidence in the light most favorable to the State, and we examine each evidentiary item in the context of all the evidence, not in isolation." *Duguay*, 142 N.H. at 225 (quotation omitted).

At trial the defendant testified that on October 23, 1998, after locking up and setting the alarms, he left Dugas Superette around 10:10 p.m. As he and a store employee walked toward their cars, the defendant spotted a bag of trash that had been left outside. While he picked up the bag and placed it in the dumpster, the employee left the parking lot in her car. The videotape evidence showed that after throwing the trash into the dumpster, the defendant did not leave but re-entered the store. The videotape shows that once inside the store, the defendant walked into an office and turned on the light for a short time, and then walked toward the basement door before leaving the camera's field of view. When the defendant returned to the camera's view, he was moving quickly toward the back of the store just before the videotape ended.

When questioned by the police, the defendant, on more than one occasion, denied re-entering the store. Instead, the defendant reported that he drove to the bank at the Nashua Mall, and then straight home. In the police interview audiotaped November 12, 1998, the defendant several times specifically denied re-entering the store. When confronted with the videotape confirming that he re-entered the store, the defendant stated that he had "to question [the videotape] very, very much." In fact, it was not until he testified at trial that he admitted re-entering the store.

■ Viewed in the light most favorable to the State, this evidence reasonably excludes all other conclusions except guilt. First, the defendant testified and the videotape evidence confirms that he was the last person in the store before the fire was discovered. The defendant also testified that when he left the store, he locked the doors and set the alarms. The fire fighters testified that when they arrived at the scene they had to forcibly enter the store because each of the doors was locked, and the investigators found no other signs of forced entry. Thus, a rational trier of fact, viewing the evidence in the light most favorable to the State, could have found that the defendant was the only person who had the opportunity to set the fire.

Second, when questioned by the police, the defendant repeatedly denied re-entering the store. Based on his continued denial, even when faced with strong evidence to the contrary, we cannot say that it was unreasonable for the jury to conclude that the defendant's denial was an attempt to conceal his guilt. *Cf. State v. Alexander*, 143 N.H. 216, 223 (1998) (recognizing jury may infer culpable mental state based on defendant's efforts to deceive police).

The defendant argues that the evidence failed to exclude all rational conclusions other than guilt because it failed to exclude other people who also had the alarm codes and a key to the store. None of the evidence, however, suggested that any of these people were at the store within the appropriate time frame. The defendant further contends that the evidence failed to exclude Roy Jenkerson. Jenkerson worked at the pizza concession within the store. While Jenkerson did have access to the pizza concession area, he did not have access to the grocery store. Once the store alarm was set, Jenkerson could not have entered the store without causing the alarm to go off. Because none of the alarms went off, the defendant cannot show that no rational trier of fact could exclude the conclusion that Jenkerson started the fire.

Finally, the defendant argues the evidence failed to exclude P.J. Kulas, a former store employee. The jury heard testimony that on the night of the fire, Kulas was dining in Nashua with his family. None of the evidence presented showed that Kulas went to the store that evening, or that he

knew the codes and had a key to the store. Because there was no evidence placing Kulas at the store, the defendant cannot show that no rational trier of fact could exclude the conclusion that Kulas started the fire. Thus, the evidence, considered as a whole in the light most favorable to the State, excluded all rational conclusions other than the conclusion that the defendant started the fire.

## II. Admitting Statement Presented by State in Late Discovery

We now turn to the defendant's argument that the trial court improperly admitted into evidence portions of a statement he made to the police that were not turned over to the defendant until the fifth day of trial. The disputed statement was part of the audiotaped statement the defendant made to the police on November 12, 1998. Prior to trial the defendant requested a copy of all statements he made to the police. In response, the State provided him with a transcript of his November 12, 1998 statement. Just prior to the fifth day of trial, the State discovered that it had inadvertently failed to transcribe one side of the audiotape. Consequently, the transcript provided to the defendant was missing one-third of his statement. Once the State discovered its error, it immediately transcribed the balance of the audiotape and provided the defendant with a copy. At trial, the defendant asserted that by failing to provide the entire statement before trial, the State violated Superior Court Rule 98 A(1) and violated the Due Process Clause of the State and Federal Constitutions. To sanction the State for its failure to comply with Rule 98 A(1) and to protect his right to a fair trial, the defendant requested that the court exclude from evidence the entire November 12, 1998 statement. The State asserted the missing portion did not contain exculpatory evidence. The State also represented to the court that its failure to transcribe the second side of the first tape was due to negligence and not done in bad faith. The defendant did not dispute these representations. Rather, he asserted that the newly transcribed portion contained a detailed accounting by him of his activities the night of the fire, including an additional statement that he had not re-entered the store after closing. The defendant argued these statements prejudiced his case because the State would use the statements to show that it was unlikely that he would be able to recall his activity in such detail but forget re-entering the store. Following a hearing on the matter, the trial court denied his request and admitted the entire statement into evidence.

On appeal, the defendant argues that by admitting the entire statement, the trial court abused its discretion and violated his rights to a fair trial and to due process of law. Superior Court Rule 98 requires:

"Within ten (10) calendar days after the entry of a not guilty plea by the defendant, the state shall provide the defendant with a copy of all statements, written or oral, signed or unsigned, made by the defendant to any law enforcement officer or his agent which are intended for use by the state as evidence at trial or at a pretrial evidentiary hearing." Where the State "has failed to comply with this rule, the court may take such action as it deems just under the circumstances, including but not limited to: (i) ordering the party to provide the discovery not previously provided, (ii) granting a continuance of the trial or hearing, (iii) prohibiting the party from introducing the evidence not disclosed, (iv) assessing costs and attorneys fees against the party or counsel who has violated the terms of this rule." SUPER. CT. R. 98 J. Because Rule 98 permits the trial court discretion in determining whether evidence ought to be excluded when a party fails to comply with Rule 98, we will not reverse the trial court's ruling unless it constitutes an abuse of discretion. *See State v. Nadeau*, 126 N.H. 120, 124 (1985). "To show an abuse of discretion, the defendant must demonstrate that the court's ruling was clearly untenable or unreasonable to the prejudice of his case." *State v. Francoeur*, 146 N.H. 83, 86 (2001) (quotation omitted).

■ Although, the defendant asserts that the newly transcribed portion of his statement contained "numerous details of [his] account of his activities the night of the fire," the defendant does not argue that this portion of the interview contained any new information not contained in his October 24, 1998 audiotaped interview or the incomplete transcript of the November 12, 1998 interview. Therefore the defendant was not unreasonably prejudiced by delay in transcribing his entire statement. The fact that in the newly transcribed statement the defendant denied once again that he had re-entered the store after closing did not unreasonably prejudice the defendant, because he had already denied re-entering the store on at least four occasions in the previously transcribed statement.

■ In its ruling to admit the entire statement, the trial court allowed the defendant an opportunity to review the complete statement with his counsel and permitted him to use the State's failure to transcribe the entire statement in his cross-examination of the State's witnesses responsible for investigating the case. Thus, we cannot hold that the trial court abused its discretion in admitting the entire statement.

Finally, although the defendant asserts that admitting the entire statement violated his due process rights under the State and Federal Constitutions, he makes no separate argument beyond citing *United States v. Agurs*, 427 U.S. 97 (1976), and *State v. Dukette*, 113 N.H. 472

(1973). These cases involve the prosecution withholding evidence favorable to the defendant. *See Agurs*, 427 U.S. at 100-01; *Dukette*, 113 N.H. at 476. Here, the defendant does not assert that the newly-transcribed portion contained favorable evidence. Therefore, the cases the defendant cites are inapposite and we decline to further address them.

*III. Limiting Defendant's Cross-Examination of State's Witness*

■ ■ The defendant next argues that the trial court erred when it limited his cross-examination of State's witnesses, thereby excluding certain evidence regarding P.J. Kulas. Trial courts have broad discretion to determine the scope of cross-examination under the New Hampshire Rules of Evidence. *State v. Isaacson*, 129 N.H. 438, 440 (1987). Rule 611(b) provides: "A witness may be cross-examined on any matter relevant to any issue in the case, including credibility. In the interests of justice, the judge may limit cross-examination with respect to matters not testified to on direct examination." "In determining the limits of cross-examination, a trial court must balance the prejudice, confusion, and delay of the proffered testimony against its probative value." *State v. Rodriguez*, 136 N.H. 505, 509 (1992); *see also* N.H. R. Ev. 403. We will uphold the trial court's decision limiting the scope of cross-examination absent an abuse of discretion. *See State v. Moses*, 143 N.H. 461, 464 (1999).

The defendant sought to present evidence that on the day of the fire, Kulas, a former employee of Dugas Superette, was on trial defending himself against a criminal aggravated sexual assault charge. The defendant's purpose in eliciting such testimony was to show that Kulas had a motive to set the fire because he would have been worried about getting a long prison sentence and his time for settling old scores, including his purported resentment toward his former employer, was running short. To support his theory, the defendant elicited testimony about Kulas' feelings toward the Dugases from Kulas' mother and Edgar Dugas. The defendant also cross-examined Kulas' wife regarding her husband's whereabouts on the day of the fire and effectively challenged her testimony regarding the time spent at dinner with her family at a restaurant in Nashua. Further, in his cross-examination of Kulas' wife, the defendant effectively highlighted the amount of alcohol Kulas consumed while at dinner. Thus, the trial court only restricted the defendant from eliciting testimony regarding Kulas' trial that was ongoing at the time of the fire.

The defendant argues that when the trial court excluded testimony about Kulas' trial, it failed to properly balance the probative value of this evidence against its prejudicial nature. *See* N.H. R. Ev. 403. Rule 403 states that "[a]lthough relevant, evidence may be excluded if its probative

value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."

We agree with the defendant that the proposed testimony was relevant. To be relevant evidence need only have "any tendency to make the existence of any fact that is of consequence . . . more probable or less probable." N.H. R. Ev. 401. Although relevant, the testimony had low probative value. To infer from the fact that Kulas was on trial that he would set fire to his former employer's business requires a number of assumptions about the likelihood of conviction and sentence that would be imposed. Thus, the link between the excluded evidence and the fact to be proven was tenuous.

■■ This same testimony, moreover, would have had a prejudicial effect. Had the jury learned that Kulas was on trial at the time of the fire, they might have improperly inferred that because he was accused of another crime, he probably committed this crime as well. *See generally* N.H. R. Ev. 404. It is improper for a jury to conclude that a person has a propensity to engage in criminal behavior because he has been charged with, or even convicted of, wholly unrelated criminal conduct. *See* N.H. R. Ev. 404 (b). In addition, to properly assess this evidence the jury would have had to consider the likely outcome and sentence on the pending charges. Such speculation would have led the jury away from the central issues in the case. These are the factors the trial judge balanced in deciding to exclude this evidence. Thus, although the evidence was relevant, we cannot say the trial court abused its discretion when it ruled the proposed cross-examination would elicit evidence whose probative value was substantially outweighed by the danger of unfair prejudice, would tend to confuse the issues, or otherwise would mislead the jury.

The defendant also contends that by limiting his cross-examination, the trial court violated his State and federal constitutional rights to confront witnesses. *See* N.H. CONST. pt. I, art. 15; U.S. CONST. amend. VI. "When a defendant, as in this case, has invoked the protections of the New Hampshire Constitution, we will first address these claims." *State v. Ball*, 124 N.H. 226, 231 (1983). Because the federal Confrontation Clause affords no greater protection than the State Confrontation Clause, we need not undertake a separate federal analysis. *See State v. Michaud*, 146 N.H. 29, 31 (2001).

"Cross-examination is necessary to ensure that the defendant 'shall have the right to produce all proofs that may be favorable to himself; to meet the witnesses against him face to face, and be fully heard in his defense . . . .'" *State v. Ramos*, 121 N.H. 863, 866 (1981) (quoting N.H. CONST. pt. I, art. 15). Therefore, "[t]he right to cross-examine adverse

witnesses in criminal cases is fundamental." *Id.* Although the trial court has broad discretion to fix the limits of cross-examination, it "may not completely deny a defendant the right to cross-examine a witness on a proper matter of inquiry." *Id.*

■ The record shows that the trial court permitted the defendant to inquire about Kulas' employment and the circumstances surrounding his termination. The trial court also allowed cross-examination regarding Kulas' whereabouts on the night of the fire. Because the trial court allowed the defendant to elicit sufficient facts in support of his theory that Kulas had the motive and temporal opportunity to start the fire, excluding testimony regarding Kulas' trial did not completely deny the defendant the right to .cross-examine the witnesses. Accordingly, we hold the trial .court did not violate the defendant's constitutional right to confront witnesses.

*IV. Submitting Audiotapes and Videotapes to Jury*

During trial, the jury viewed and the court admitted into evidence the videotape from the store's surveillance camera, including a scientifically enhanced version of the videotape. The jury also listened to the audiotapes of the two police interviews with the defendant and the court admitted these audiotapes into evidence as well. The defendant requested that the jury not be permitted to review these videotapes and audiotapes during deliberations. Instead, the defendant suggested that the jury should be required to rely only upon their recollections of both the videotapes and audiotapes in their deliberations.

On appeal, the defendant contends the videotapes and audiotapes are part of the defendant's testimony, and, therefore, like .other witnesses' testimony, the jurors should rely only upon their recollections of this "taped testimony" when deliberating. In *State v. Monroe*, 146 N.H. 15, 17, (2001), we decided that where, as here, videotapes and audiotapes are admitted as exhibits into evidence, they are not testimonial but rather tangible exhibits. Consequently, as with other admitted exhibits, the presumption is videotapes and audiotapes "are available to the jurors to consider while deliberating, without limitation." *Id.* Because the defendant does not argue that the jury unfairly focused upon this evidence, *see State v. Brough*, 112 N.H. 182, 186 (1972), we find no error in submitting the videotapes and audiotapes for the jury to review while deliberating.

*Affirmed.*

BROCK, C.J., and BRODERICK, NADEAU and DALIANIS, JJ., concurred.